FILED
2021 Dec-08  PM 12:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| JAMES THOMAS, et al., *Plaintiffs*, vs. JOHN H. MERRILL, in his official capacity as Secretary of State of Alabama, et al., *Defendants*. | Case No.: 2:21-cv-1531-AMM |

## PLAINTIFFS' OPPOSED MOTION FOR RECUSAL

Plaintiffs respectfully seek the recusal of Judge Maze from this action under 28 U.S.C. §§ 455(a) and (b)(1). They do so based on his prior knowledge of material evidentiary facts likely at issue here and the impairment of the appearance of impartiality. Both arise from the fact that until 2019, while working in the Alabama Attorney General's Office, Judge Maze represented Defendant Secretary of State John Merrill in a voting rights action brought by two of the plaintiffs here, Greater Birmingham Ministries ("GBM") and the Alabama State Conference of the NAACP ("Alabama NAACP"). That action was resolved by this Court in 2018, and by the Eleventh Circuit in June 2021, with Judge Maze still listed as a counsel of record.

*Greater Birmingham Ministries v. Merrill* ("*GBM*") challenged Alabama's photo identification ("Photo ID") requirement to vote under the U.S. Constitution

and Section 2 of the Voting Rights Act ("VRA") and, like this action, Secretary Merrill was named as a defendant in his official capacity. As counsel for Secretary Merrill, Judge Maze defended Secretary Merrill's deposition and deposed the Alabama NAACP under Rule 30(b)(6) and its President, Benard Simelton, individually under Rule 30(b)(1). During these depositions, Judge Maze gained knowledge of evidentiary facts about the membership of the Alabama NAACP, which is relevant to potentially dispositive issues like standing. GBM's and the Alabama NAACP's standing were actively litigated in *GBM* and will likely be disputed in this case. Indeed, Secretary Merrill has repeatedly contested the standing of GBM, the Alabama NAACP, and other civil rights organizations in recent voting-related cases. Judge Maze also deposed experts and attended depositions regarding voter turnout by race, analysis of racial polarization in voting, and how Alabama's historical pattern of discrimination manifests in its voting policies today. All of these inform legal issues the Court will be called upon to decide in this case.

Judge Maze's deposition of Mr. Simelton also involved tense exchanges about Mr. Simelton's and the Alabama NAACP's views of whether Secretary Merrill and those defending him harbored racial animus. Judge Maze also deposed Plaintiffs' expert, asking him about Alabama's racial history and its effect on current voting policies. These sensitive issues of race and discrimination in Alabama's recent voting-related policies are also present in the instant case involving the same parties.

Dr. M.V. "Trey" Hood III is a material witness in this case given his role in analyzing racial polarization in voting in certain areas of Alabama for state legislative redistricting purposes. Dr. Hood worked directly with Judge Maze as one of Secretary Merrill's experts in *GBM*, and his work there may overlap with issues on which he will be questioned in this action. Plaintiffs' counsel has also been informed that Dr. Hood will serve as an expert on behalf of Secretary Merrill in the related action of *Milligan v. Merrill*, No. 2:21-cv-01530 (N.D. Ala.), and, therefore, Plaintiffs reasonably suspect that Dr. Hood may also serve as an expert in this case. Because Dr. Hood will serve as a fact and/or expert witness here, Judge Maze will be called upon to make judgements about the credibility, expertise, and analysis of an expert whom he and his colleagues recently worked closely with on similar issues.

Judge Maze also authored an amicus brief on behalf of the State's then-Governor in a Supreme Court case concerning Sections 4 and 5 of the VRA, in which he argued that "Alabama's modern governments have shown a great commitment to minority voting rights." Amicus Curiae Br. of the Hon. Bob Riley at 11, *Nw. Austin Municipal Utility Dist. No. 1 v. Holder*, No. 08-322 (U.S. Feb. 26, 2009). That proposition will be vigorously contested here. His urging of these positions, along with his role in *GBM*, could cause the reasonable observer to doubt whether Judge Maze can impartially adjudicate a case involving these parties about the role of Alabama's recent history of racial discrimination on its present voting-related laws.

3

Recusal is warranted here because of Judge Maze's actual conflict based on his extrajudicial knowledge of evidentiary facts likely to be disputed in this action and serious issues concerning the appearance of partiality.

**STATEMENT OF THE FACTS**

In 2016, GBM and the Alabama NAACP challenged Alabama's photo ID law. Secretary of State Merrill was a defendant in that action, as he is here. *See generally Greater Birmingham Ministries v. Merrill*, 284 F. Supp. 3d 1253 (N.D. Ala. 2018), *aff'd sub nom. Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299 (11th Cir. 2021), *reh'g en banc denied* 997 F.3d 1363 (11th Cir. 2021). The Alabama Attorney General's office represented Secretary Merrill. Judge Maze, then with the office, was a counsel of record in the case both at the district court level and on appeal. *See* Notices of Appearance, *GBM*, No. 2:15-cv-02193-LSC, ECF No. 138 (N.D. Ala. Jan. 13, 2017); No. 18-10151 (11th Cir. Feb. 5, 2018).

The *GBM* litigation lasted approximately five years and involved preliminary injunction proceedings, extensive discovery, and summary judgment briefing. Beyond the Alabama Photo ID law's constitutionality and compliance with the VRA, the parties contested a number of other issues in the case. The issues contested by Defendant Merrill included the standing of the Alabama NAACP and GBM, *see GBM*, 250 F. Supp. 3d 1238, 1242–43 (N.D. Ala. 2017), whether the plaintiffs could depose Secretary Merrill, *see generally GBM*, 321 F.R.D. 406 (N.D. Ala. 2017), and

4

discovery issues including work-product and legislative privilege, *see generally GBM*, No. 2:15-CV-02193-LSC, 2017 WL 2903197 (N.D. Ala. July 7, 2017).

In defending Secretary Merrill, Judge Maze and co-counsel resisted the plaintiffs' attempts to depose him, with the court allowing the deposition but limiting the time and scope. *GBM*, 321 F.R.D. 406 (N.D. Ala. 2017). Judge Maze defended the deposition, interposing objections to topics he asserted to be beyond the limits set by the Court. Merrill Dep. at 31–34, 38–39, 46–47, 51–52, 62, 100, 112, 117–18, 153, 168–70, 252–58 (Ex. A to Rosborough Decl.) Judge Maze also questioned Secretary Merrill at the deposition, *id.* at 265–86, including about disputes between Secretary Merrill and the Alabama NAACP President, *id.* at 281–83.

Judge Maze deposed the Alabama NAACP as well as its President, Benard Simelton, in *GBM*. In both depositions, he solicited answers concerning the organization's financials and membership. Alabama NAACP Dep. at 10–25, 30–32, 44–47; Simelton Dep. at 94–101, 127–28 (Exs. B and C to Rosborough Decl.). In Mr. Simelton's deposition, Judge Maze pressed him on a number of topics relating to racism in Alabama state government and its voting policies, including whether Attorney General Jeff Sessions harbored racist and white supremacist views, Simelton Dep. at 17–24, 32–33, and whether Defendant Merrill harbors such views, *id.* at 33–35. He also asked Mr. Simelton about whether Alabama's last redistricting process informed or affected his views about discriminatory intent regarding the

Photo ID law. *Id.* at 167–70. The defendants also deposed GBM President Scott Douglas, and although Judge Maze did not attend, that deposition included testimony about GBM's membership and Mr. Douglas's views on Alabama's redistricting. Douglas Dep. at 49–50, 70–77, 153–55 (Ex. D to Rosborough Decl.). As Secretary Merrill's counsel, Judge Maze likely read that deposition testimony.

Plaintiffs in *GBM* also presented experts, including historian Dr. Morgan Kousser, who Judge Maze deposed, and political scientist Dr. Zoltan Hajnal, whose deposition Judge Maze attended. Dr. Hanjal's deposition involved questions about county-level voting turnout as linked to racial demographics, Hanjal Dep. at 21–25, 37–39 (Ex. E to Rosborough Decl.), and direct criticisms of defense expert Dr. Hood's opinions, *id.* at 126–48. Dr. Hood testified on rates of photo ID possession, among other things. *See GBM*, 284 F. Supp. 3d at 1269. Defendants' counsel in this case has indicated that Dr. Hood performed racial polarization analysis with respect to certain state legislative districts to advise Defendants Pringle and McClendon, making him an important witness in this litigation as well.

In Dr. Kousser's deposition, Judge Maze questioned him about whether Secretary Merrill harbored discriminatory intent in enforcing the law and whether Dr. Kousser believed that the lawyers who were defending Secretary Merrill, including Judge Maze, harbored such intent as well. Kousser Dep. at 24–27 (Ex. F to Rosborough Decl.). He further questioned Dr. Kousser as to whether "it's

6

appropriate or possible to set your view of Alabama in 1901 and 1965 aside when you are judging Alabama in 2011 and 2017," *id.* at 45, and what Alabama must do "to escape that history to the point where you can set aside 1901, 1965 when you're judging the intent of present day Alabama," *id.* at 46–47.

Judge Maze was also counsel of record to former Alabama Governor Riley as an amicus concerning the constitutionality of Sections 5 of the VRA. In that brief, he contended that Congress had "wrongly equated Alabama's modern government, and its people, with their Jim Crow ancestors," that Alabama's governments had shed their "abysmal voting rights record of the 1960's" and instead "have shown a great commitment to minority voting rights." Br. Amicus Curiae of the Hon. Bob Riley at 1, 3, 4, 11, *Nw. Austin Municipal Util. Dist. No. 1 v. Holder*, No. 08-322 (U.S. Feb. 26, 2009) (attached as Ex. G to Rosborough Decl.).

## ARGUMENT

Judges must recuse themselves if their "impartiality *might reasonably* be questioned," 28 U.S.C. § 455(a) (emphasis added), or if they have "personal knowledge of disputed evidentiary facts concerning the proceeding," 28 U.S.C. § 455(b)(1). A judge must consider the conflict "with regard to the overall case, not just his potential conflict for each separate issue or each stage of the litigation." *Murray v. Scott*, 253 F.3d 1308, 1310–11 (11th Cir. 2001). "[T]he benefit of the

7

doubt must be resolved in favor of recusal." *Id.* at 1310. Because either standard is sufficient to require recusal and both are met, Judge Maze's recusal is required.

I.    **Judge Maze Gained Personal Knowledge of Evidentiary Facts Likely to be Disputed in this Case as Counsel in Prior Litigation that Involved Many of the Same Parties and Overlapping Issues.**

Judges must recuse when they have "personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). This standard "vitiates the carefully constructed rules of procedure and evidence that ensure deliberate, unbiased fact finding." *United States v. State of Alabama*, 828 F.2d 1532, 1546 (11th Cir. 1987). When this standard is met, "partiality is conclusively presumed, making recusal mandatory." *United States v. Scrushy*, 721 F.3d 1288, 1303 (11th Cir. 2013). Based on this standard, a "judge who previously served as counsel of record for a related case may be disqualified." *Murray*, 253 F.3d at 1312.

In *State of Alabama*, 828 F.2d 1532, the Eleventh Circuit considered whether Judge U.W. Clemon should have disqualified himself in a desegregation case involving Alabama colleges when he participated as a counsel in earlier school desegregation litigation in Alabama but took no part in the portion of the case involving colleges. Judge Clemon's representation in the prior case was "restricted to the representation of black high school principals in a race discrimination suit." *Id.* at 1545. Because the claims against higher education institutions took place during a time period relevant to the claims in the case he heard, however, the

Eleventh Circuit held that his "limited involvement . . . left Judge Clemon with knowledge of facts that were in dispute in the instant case," requiring recusal. *Id.*

Similarly, in *Murray*, the Eleventh Circuit held that Judge De Ment erred by not recusing himself from a case involving issues and parties he had been involved with years before taking the bench. 253 F.3d at 1312. Judge De Ment had been U.S. Attorney during litigation thirty-years prior involving the same company, and the plaintiffs argued that assertions made during that litigation about the nature of the company might become relevant in their case. *Id.* at 1313. Even though Judge De Ment could not "recall the specific facts about his involvement" in the 1970 litigation, the Eleventh Circuit held it was proper to presume knowledge of disputed evidentiary facts that "may potentially become an issue in the present litigation," requiring recusal even though three decades had passed. *Id.*

The likelihood that Judge Maze has knowledge of disputed evidentiary facts based on his prior role as counsel for a defendant here—on similar legal issues and until earlier this year—is even greater than in those cases. As in *Murray* and *State of Alabama*, *GBM* involved several factual and legal issues likely to recur in this litigation: (a) facts concerning the membership of the Alabama NAACP and GBM material to whether the organizations have associational standing; (b) the role of race in enacting voting-related policies in the last decade in Alabama; and (c) information about turnout and registration rates by race and county that affect analyses of

whether a district drawn using race as the predominant factor was narrowly tailored to comply with the VRA. Unlike in *Murray* and *State of Alabama*, where mere involvement in the prior case without proclaimed knowledge of the disputed issues was sufficient to require recusal, Judge Maze's active participation in *GBM* gives him direct knowledge of all three of these areas of likely disputed evidentiary facts.

As to standing for the organizations, deposition testimony from the Alabama NAACP and GBM about their memberships will be relevant if Defendants challenge the associational standing of these plaintiffs. Judge Maze took the depositions of the Alabama NAACP and its President himself, giving him direct knowledge of those material evidentiary facts. Alabama and Secretary Merrill have repeatedly challenged the standing of organizational plaintiffs in voting actions and courts have assessed that standing *sua sponte* in others, making it likely that standing may emerge as an issue here as well. *See, e.g.*, *GBM*, 250 F. Supp. 3d 1238, 1242–43 (N.D. Ala. 2017) (ruling on challenge to associational and organizational standing); *Ala. State Conf. of NAACP v. State*, 264 F. Supp. 3d 1280, 1290 (M.D. Ala. 2017) (rejecting Alabama's argument against the Alabama NAACP's associational standing); *see also Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 268–69 (2015) (reversing panel's *sua sponte* rejection of an organization's associational standing in racial gerrymandering action).

As to the role of race and information about turnout and registration rates by race and county, Judge Maze solicited testimony from one of the plaintiffs' experts in *GBM* on this issue and attended a deposition where the latter facts were discussed. His knowledge of likely disputed evidentiary facts significantly exceeds the level of knowledge that required recusal in *Murray* and *State of Alabama*.

**II.    Judge Maze's Impartiality Might Reasonably be Questioned Given his Extensive Role as Counsel to Defendant Merrill and Opposing Plaintiffs in a Recent Voting Case.**

Section 455(a) provides that any federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The purpose of this section "is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988). Just the "appearance of impropriety," *see United States v. Davis*, 789 F. App'x 105, 111 (11th Cir. 2019), compels recusal even in the "total absence of any showing of actual bias," *In re Faulkner*, 856 F.2d 716, 721 (5th Cir. 1988).

Recusal is required under this standard whenever "an objective, disinterested, lay observer fully informed about the facts would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988). This calls for an objective evaluation, "so that what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540,

548 (1994). The standard focuses on "what is revealed to the parties and the public, as opposed to the existence in fact of any bias or prejudice." *Hall v. Small Bus. Admin.*, 695 F.2d 175, 178–79 (5th Cir. 1983). If the judge "has any question about the propriety of his sitting in a particular case," the judge "should exercise his discretion in favor of disqualification." *Id.*

In *Parker*, the district court judge added a footnote to a summary judgment opinion crediting his law clerk for the clerk's review of discovery materials and assistance in determining whether issues of material fact existed. 855 F.2d at 1523. The judge also allowed the law clerk to hold a hearing with counsel without the judge present and report the hearing results back to the judge. *Id.* The law clerk was the son of a law firm partner whose firm represented one of the parties in the case, although the father was not himself involved. *Id.* The Eleventh Circuit held that the combination of the law clerk's father's membership in the firm representing a party and the judge publicly crediting the clerk with his work on the case and allowing him to hold a hearing "might cast doubt in the public's mind" on the judge's impartiality "and at a minimum these facts raise the appearance of impropriety." *Id.* at 1524. Thus, although the Eleventh Circuit found no actual bias, the possibility that the public could reasonably believe that the judge was not impartial required recusal.

Similarly, in *Preston v. United States*, 923 F.2d 731 (9th Cir. 1991), the district court judge's former law firm had represented an interested non-party to the

12

wrongful death action. There, the judge's prior law firm represented an individual in objecting to a subpoena, during a deposition, and regarding another discovery motion. *Id.* at 734. The Ninth Circuit held that even though the judge himself had never worked on either of the cases and that his prior law firm's client "was not a named party to the suit," the focus must be on "whether the relationship between the judge and an interested party was such as to present a risk that the judge's impartiality in the case at bar might reasonably be questioned by the public." *Id.* at 734–35. The Ninth Circuit held that this "case generates such a risk" because of a contractual clause that could make the judge's former firm's client subject to an indemnification claim if the court had ruled against the government. *Id.* at 735.

Here, Judge Maze's role in the *GBM* litigation creates a greater risk of the public reasonably carrying significant doubts as to his impartiality than in the *Parker* and *Preston* cases, where courts found recusal to be required. In *Parker* and *Preston*, courts deemed reasonable a perception of partiality despite multiple degrees of separation between the judge and the source of the potential conflict—in the former, his law clerk's father's law firm was involved with the case, and in the latter, the judge's former law firm represented a non-party. In neither case was the judge directly involved. By contrast, Judge Maze played a direct, personal, and pivotal role in a lawsuit representing the lead defendant in the present case and against two of

13

the plaintiffs in the present case; issues in that lawsuit concerned the role of race in the voting-related policies of the State of Alabama—as this case does.

In *GBM*, Judge Maze participated in aspects of the case that would cause a lay observer to reasonably question whether his impartiality would be compromised by preconceived opinions concerning the parties and facts in this case. As an advocate, Judge Maze pressed NAACP President Simelton about whether he or the Alabama NAACP believed Secretary Merrill harbored racist and white supremacist views, and expressed skepticism that he had a basis for that conclusion. Simelton Dep. at 33–35. Judge Maze was acting as counsel to Secretary Merrill and not necessarily expressing his own views, but these exchanges raise the reasonable perception that he may approach these parties litigating adjacent issues with preconceived notions. Indeed, Judge Maze also questioned Mr. Simelton about Alabama's last redistricting cycle and his views about the legislature's intent in that effort as well. *Id.* at 167–70.

While his interactions in litigation-related proceedings in support of Secretary Merrill and against the Alabama NAACP may prove most significant, other aspects of the case are relevant too. One of Secretary Merrill's experts in *GBM*, Dr. Trey Hood, appears to be a significant witness for Defendants in this case given his analysis of racial polarization in voting in different state legislative districts. Assessing Dr. Hood's expertise, the validity of his analysis, and his credibility will be relevant in assessing whether race-predominant efforts to comply with the VRA

14

in drawing districts were narrowly tailored. Having retained Dr. Hood as an expert on related issues involving some of the same parties raises the question of whether observers will believe that Judge Maze can judge his testimony impartially.

Judge Maze also pressed one of Plaintiffs' experts, Dr. Kousser, on whether Alabama's racial discrimination in the political process still bears any relevance to the present intent of state officials. Kousser Dep. at 45–47. Compounding this involvement, Judge Maze authored an amicus brief touting Alabama's "great commitment to minority voting rights" and castigating Congress for "wrongly equat[ing] Alabama's modern government . . . with their Jim Crow ancestors." Br. Amicus Curiae of the Hon. Bob Riley at 11, 1, *Nw. Austin Municipal Util. Dist. No. 1*. Judge Maze's position in that case as well as his persistent questioning of Dr. Kousser adds to a reasonable perception that he may have already formed a view of key facts related to Plaintiffs' claims here.

Judge Maze's direct and significant involvement representing one of the Defendants here and opposing two of the Plaintiffs alone raises significant doubts as to whether the public might reasonably doubt his impartiality.

## CONCLUSION

Because Judge Maze has knowledge of facts likely to be disputed in this case from an extrajudicial source, and because his involvement in *GBM* as counsel creates the appearance of partiality to a reasonable observer, his recusal is required here.

15

DATED this 8th day of December 2021.

/s/ *Sidney Jackson*
Sidney Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
WIGGINS, CHILDS, PANTAZIS, FISHER & GOLDFARB
301 19th Street North
Birmingham, AL 35203
(205) 314-0500
sjackson@wigginschilds.com
nlawsen@wigginschilds.com

Deuel Ross*
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300
dross@naacpldf.org

Leah Aden*
Stuart Naifeh*
Kathryn Sadasivan^ (ASB-517-E48T)
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
laden@naacpldf.org
snaifeh@naacpldf.org
ksadasivan@naacpldf.org

Jessica L. Ellsworth*
Shelita M. Stewart*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004

Respectfully submitted,

/s/ *Davin M. Rosborough*
Davin M. Rosborough*
Julie A. Ebenstein*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
New York, NY 10004
(212) 549-2500
drosborough@aclu.org
jebenstein@aclu.org

LaTisha Gotell Faulks (ASB-1279-I63J)
Kaitlin Welborn*
AMERICAN CIVIL LIBERTIES UNION OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
tgfaulks@aclualabama.org
kwelborn@aclualabama.org

Caren E. Short (ASB-0646-P48N)
Jack Genberg*
Liza Weisberg*
SOUTHERN POVERTY LAW CENTER
PO Box 1287
Decatur, GA 30031
(404) 521-6700
caren.short@splcenter.org
jack.genberg@splcenter.org
liza.weisberg@splcenter.org

Michael Turrill*
Harmony R. Gbe*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067

16

(202) 637-5600
jessica.ellsworth@hoganlovells.com
shelita.stewart@hoganlovells.com

David Dunn*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

(310) 785-4600
michael.turrill@hoganlovells.com
harmony.gbe@hoganlovells.com

Blayne R. Thompson*
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
blayne.thompson@hoganlovells.com

*Attorneys for Plaintiffs*

Janette McCarthy Wallace**
Anthony Ashton*
Anna-Kathryn Barnes*
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE
(NAACP)
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org

*Attorneys for Plaintiff Alabama State
Conference of the NAACP*

* Admitted *pro hac vice*
** Motion for admission *pro hac vice*
pending or to be filed
^Request for admission to the Northern
District of Alabama forthcoming

17

**CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed a copy of the foregoing with

the Clerk of Court using the CM/ECF system which provides electronic notice of

filing to all counsel of record.

This the 8th day of December, 2021.

*/s/ Davin Rosborough*