FILED

2021 Dec-30  PM 09:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JAMES THOMAS, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-01531-AMM |
| | ) | |
| JOHN MERRILL, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION
TO MOTION FOR RECUSAL**

Plaintiffs have sued the Alabama Secretary of State and two State Legislators alleging that the 2021 Legislature created numerous State House and Senate districts that unconstitutionally discriminate against Alabamians based on race. Plaintiffs demand Judge Maze's recusal from this case based on his involvement as a lawyer in a separate case brought by Plaintiffs Greater Birmingham Ministries (GBM) and the Alabama NAACP in 2015 challenging an Alabama law about voter identification requirements enacted in 2011. Separately, they also claim that reasonable observers might fairly doubt Judge Maze's ability to impartially adjudicate Plaintiffs' case because he worked on the 2015 case and once wrote a brief for Alabama's Governor arguing that Alabama had made significant advances in its commitment to minority voting rights between the time of Jim Crow and 2009. According to Plaintiffs, these circumstances show that Judge Maze has "personal knowledge of disputed

evidentiary facts concerning th[is] proceeding" and that his "impartiality might reasonably be questioned." 28 U.S.C. § 455(b)(1) & (a). Plaintiffs are mistaken.

First, Plaintiffs fail to identify specific "disputed evidentiary facts" within Judge Maze's personal knowledge that are relevant to this case. To be sure, they refer (very) generally to three "factual issues … likely to recur in this litigation": (1) "facts concerning the membership of the Alabama NAACP and GBM material to whether the organizations have associational standing;" (2) "the role of race in enacting voting-related policies in the last decade in Alabama;" and (3) "information about turnout and registration rates by race and county that affect analyses of whether a district drawn using race as the predominant factor was narrowly tailored to comply with the VRA." Doc. 40 at 9-10. But other than this 30,000-foot view, Plaintiffs' motion gets no more specific about what "evidentiary facts" Judge Maze knows that will likely be "disputed" in this 2021 redistricting case. These sorts of "facts"—if they are "evidentiary facts" at all—are not likely to be "disputed" within the meaning of Section 455(b)(1). Though the parties to this case may dispute the legal relevance of many facts, Plaintiffs cite no facts within Judge Maze's knowledge that are likely to be material or disputed here.

Second, even though Judge Maze left the Alabama Attorney General's Office two and one-half years ago when he became a federal judge, Plaintiffs contend that he is required to recuse because of his work at the Attorney General's Office. This

argument fails in multiple ways. At the outset, Plaintiffs ignore the applicable statutory provision: for former government lawyers like Judge Maze, the inquiry is whether he "participated as counsel . . . *concerning the proceeding* or expressed an opinion *concerning the merits of the particular case* in controversy." 28 U.S.C. § 455(b)(3) (emphasis added). Because Judge Maze did not personally participate in this case he is not required to recuse.

Moreover, even if Section 455(a) applies, "Courts have uniformly rejected the notion that a judge's previous advocacy for a legal, constitutional, or policy position is a bar to adjudicating a case, even when that position is directly implicated in the case before the court." *Carter v. W. Pub. Co.*, 1999 WL 994997, at *9 (11th Cir. Nov. 1, 1999) (Tjoflat, J., in chambers). A judge's past legal advocacy as an attorney does not disqualify him or her from hearing a case, even if that case touches on a similar subject matter. If it did, Justices Thurgood Marshall and Ruth Bader Ginsburg would have recused from voting rights and Equal Protection cases, *but see Sellers v. Wilson*, 123 F. Supp. 917 (M.D. Ala. 1954) (Thurgood Marshall representing plaintiffs in voting discrimination case); *City of Mobile v. Bolden*, 446 U.S. 55, 104 (1980) (Marshall, J., dissenting, in voting right case), and Chief Justice John Roberts would not have recently heard argument in *Dobbs v. Jackson Women's Health Organization*, No. 19-1392 (argued Dec. 1, 2021), based on the position of the United States that "*Roe* [*v. Wade*] was wrongly decided and should be

3

overruled." Brief for the Respondent at 13, *Rust v. Sullivan*, 500 U.S. 173 (1991) (Nos. 89-1391 and 89-1392) (then-Deputy Solicitor General John Roberts signing). Recusal was not required in those matters, and it is not required here.

Rather, "[t]o require recusal under this statute, the movant must show 'an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality.'" *Imperato v. Navigators Ins. Co.*, 681 F. App'x 743, 746 (11th Cir. 2017) (quoting *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000)); *see also Hammer v. Sam's E., Inc.*, 754 F.3d 492, 503 (8th Cir. 2014) ("Because a judge is presumed to be impartial, a party seeking recusal bears the substantial burden of proving otherwise.") (internal citation and marks omitted). Plaintiffs come nowhere close to making this showing. Rather they press the remarkable claim that a reasonable observer could question Judge Maze's impartiality because, as a lawyer for State officials, he helped them test accusations that they held "white supremacist views" or intended to perpetuate Jim Crow in their State. Doc. 40 at 14-15. No one could reasonably question Judge Maze's impartiality based on his defending his clients from such accusations, and Plaintiffs' motion should be denied.

## BACKGROUND

Judge Corey Maze was an attorney in the Alabama Attorney General's Office from 2003 until June 2019, when he was confirmed as a District Judge for the United

States District Court for the Northern District of Alabama.[1] Plaintiffs' motion focuses on two cases in which Judge Maze represented Alabama officials while still a member of the Attorney General's Office: *Nw. Austin Mun. Util. District No. One v. Holder*, 557 U.S. 193 (2009) (*"NAMUDNO"*), and *Greater Birmingham Ministries v. Merrill*, 284 F. Supp. 3d 1253 (N.D. Ala. 2018), *aff'd sub nom. Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299 (11th Cir. 2021), *reh'g en banc denied* 997 F.3d 1363 (11th Cir. 2021). This section will address those cases and then Plaintiffs' current suit.

1. In *NAMUDNO*, "a small utility district" in Texas challenged "the constitutionality of § 5 of the Voting Rights Act." *NAMUDNO*, 557 U.S. at 196. The "district ha[d] an elected board, and [wa]s required by § 5 to seek preclearance from federal authorities in Washington, D.C., before it c[ould] change anything about those elections[,] … even though there ha[d] never been any evidence of racial discrimination in voting in the district." *Id.* The district's challenge "attracted ardent briefs from dozens of interested parties," *id.* at 197, including Alabama Governor Bob Riley, whose State was also covered by Section 5, *see* Doc. 40-8. Then-Alabama Solicitor General Maze signed the brief, which sought to (1) "chronicle[] Alabama's progress in minority voting rights from 1965" through 2009, and (2)

---

[1] *See* Sen. Richard Shelby, *Corey Maze Confirmed as U.S. District Judge in Alabama* (June 12, 2019), https://perma.cc/75CP-ZX6W; *see also* U.S. Congress, PN237 - Corey Landon Maze - The Judiciary, 116th Congress, https://www.congress.gov/nomination/116th-congress/237.

illustrate the burdens of Section 5 by "describing Alabama's dealings with §5 during the Governor's six years in office." Doc. 40-8 at 13-14.[2] For what it's worth, the Supreme Court agreed with Governor Riley that "[t]hings have changed in the South," where "[v]oter turnout and registration rates now approach parity. Blatantly discriminatory evasions of federal decrees are rare. And minority candidates hold office at unprecedented levels." *NAMUDNO*, 557 U.S. at 202.

2. The *Greater Birmingham Ministries* case turned on a voter-identification law passed by the Alabama Legislature in 2011. "The voter ID law took effect in June 2014 and requires all Alabama voters to present a photo ID when casting in-person or absentee votes." *GBM*, 992 F.3d at 1304. "At the end of 2015," several individuals as well as GBM and the Alabama NAACP—both Plaintiffs in this case—sued Alabama Secretary of State John Merrill alleging that "the law has a racially discriminatory purpose and effect that violates … the Fourteenth and Fifteenth Amendments of the Constitution; Section 2 of the VRA, 52 U.S.C. § 10301; and Section 201 of the VRA, 52 U.S.C. § 10501." *Id.* "Secretary Merrill "denie[d] that the law is discriminatory, arguing that Alabama accepts so many types of acceptable IDs that most Alabamians already possess photo ID and voters who do not have one can obtain one easily." *Id.*

---

[2] Pin cites are to ECF pagination.

GBM and the Alabama NAACP both proceeded on diversion-of-resources theories of standing. *See* 2d Am. Compl. at 7-10 ¶¶ 11-18, *GBM*, Case No. 2:15-CV-02193-LSC (N.D. Ala), ECF No. 112; *see also* Compl. at 8-10, ECF No. 1; 1st Am. Compl. at 8-10, ECF No. 43. GBM alleged that it "regularly engages in efforts to register, educate, and increase turnout among African-American and Latino voters, as well as low-income voters in general," and that Alabama's photo ID law had caused and would continue to cause "GBM to divert a portion of its limited financial, personnel and other organizational resources to educating African-American and Latino voters in Alabama about the requirements of the Photo ID Law, and assisting registered voters with complying with that law in order to vote." 2d Am. Compl. at 8-9 ¶¶ 12, 14. The Alabama NAACP made similar allegations. *Id.* at 9-10 ¶¶ 15-18.

The Secretary of State challenged the organizations' standing at the pleadings stage, not by asserting that their allegations were false, but by arguing that the allegations were insufficient as a matter of law to establish standing. *See* Mot. to Dismiss 1st Am. Compl. at 52-55, *GBM*, ECF 48 (challenging organizations' standing) and Mot. to Dismiss 2d Am. Compl. at 1, ECF 124 (adopting arguments in ECF 48). The district court rejected the Secretary's arguments, noting that "the Eleventh Circuit held that the plaintiff Georgia State Conference of the NAACP established standing" by making similar resource-diversion allegations when it challenged Georgia's voter ID law. *Greater Birmingham Ministries v. Merrill*, 250

F. Supp. 3d 1238, 1243 (N.D. Ala. 2017) (citing *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1350-51 (11th Cir. 2009)). The court concluded that the organizations had "demonstrated standing to pursue these claims in their own right, and need not also establish that they have standing as representatives of their constituents." *Id.* When the Secretary later moved for summary judgment, he did not press a standing argument. *See* Secretary Merrill's Mot. for Summary Judgment, *GBM*, Case No. 2:15-CV-02193-LSC (N.D. Ala), ECF 236. Nor did he address standing in his Eleventh Circuit brief. *See* Appellee's Br., *GBM*, No. 18-10151 (11th Cir.).

During the litigation, the Secretary's expert, Dr. M.V. Hood III, testified about rates of photo ID possession among white, black, and Hispanic voters, and he estimated how likely it was that certain groups of voters would live close to "a Board of Registrars' office, which offers the easiest-to-obtain, and free, photo ID." *GBM*, 284 F. Supp. 3d at 1269-70.

Judge Maze represented the Secretary of State during part of the *GBM* litigation before the district court and Eleventh Circuit until Judge Maze left the Attorney General's Office in June 2019.[3] Both the district court and the Eleventh

---

[3] Plaintiffs' assertion that Judge Maze was counsel for Secretary Merrill in *GBM* "until earlier this year" is plainly mistaken. Doc. 40 at 9. Judge Maze entered an appearance in the Eleventh Circuit on behalf of the Secretary in 2018, and it appears that the Attorney General's Office failed to notify the Court in June 2019 that Judge Maze had left the office to become a judge and thus should no longer appear on the docket as counsel for the Secretary. But the undersigned counsel attests that Judge Maze did not further represent the Secretary in *GBM* after Judge Maze became a judge. *See* Code of Conduct for United States Judges, Canon 4(a)(5) ("*Practice of Law*. A judge should not practice law … in any forum.").

Circuit held that there were no "genuine disputes of material facts" between the parties. *GBM*, 992 F.3d at 1304.

3. The present litigation before this Court involves a challenge to two laws passed by the 2021 Alabama Legislature that set the electoral districts for the State House and Senate. *See* Doc. 1. Plaintiffs assert that 21 House districts and 12 Senate districts are unconstitutional racial gerrymanders. *Id.* at 39-41. Plaintiffs include four registered voters, GBM, and the Alabama NAACP. *See* Doc. 1 at 3-5. Neither GBM nor Alabama NAACP raise a diversion-of-resources theory of standing. *See id.* at 4-5. Rather, GBM alleges that it has members who currently reside in many of the challenged districts who "will be harmed by living and voting in unconstitutionally racially gerrymandered districts," and Alabama NAACP alleges it has members who currently reside in each of the challenged districts. *Id.* at 5.

## I. Plaintiffs have not shown that Judge Maze has any "personal knowledge of disputed evidentiary facts."

Judge Maze's recusal is not required because Plaintiffs have failed to meet their burden of showing that he possesses any "personal knowledge of disputed evidentiary facts concerning" this case. 28 U.S.C. § 455(b)(1). Plaintiffs cite three purported "factual and legal issues" "involved" in *GBM* that are "likely to recur" during this case:

> (a) facts concerning the membership of the Alabama NAACP and GBM
> material to whether the organizations have associational standing;
> (b) the role of race in enacting voting-related policies in the last decade
> in Alabama; and
> (c) information about turnout and registration rates by race and county
> that affect analyses of whether a district drawn using race as the
> predominant factor was narrowly tailored to comply with the VRA.

Doc. 40 at 9-10. None of these "factual and legal issues" are "disputed evidentiary facts" within the meaning of § 455(b)(1) as to require Judge Maze's recusal here.

*First*, on Plaintiffs' standing in this 2021 case, they note that Judge Maze deposed the Alabama NAACP and its president in 2017 and likely read a transcript of the deposition of GBM's president. Doc. 40 at 6, 10. But prior knowledge about a party—or even facts of a case—is insufficient to require recusal. *See United States v. Scrushy*, 721 F.3d 1288, 1304 (11th Cir. 2013) (recusal not required where judge learned ex parte that certain evidence was not authentic because authenticity was not in dispute); *United States v. Seiffert*, 501 F.2d 974, 978 (5th Cir. 1974) ("Mere prior knowledge of some facts concerning a litigant . . . is not in itself necessarily sufficient to require disqualification.").[4] Instead, there must be personal knowledge of specific facts that are disputed by the parties.

---

[4] The Fifth Circuit's decision (which is binding in the Eleventh Circuit) in *Seiffert* came before the modern version of § 455, including its standard requiring recusal because of "personal knowledge of disputed evidentiary facts concerning the proceeding." However, in addition to § 455, the *Seiffert* court also applied the American Bar Association's Code of Judicial Conduct, which required recusal where a judge had "personal knowledge of disputed evidentiary facts concerning the proceedings." 501 F.2d at 978. "Even under the rigid standard," the court held, recusal was not required. *Id.*

On that front, all Plaintiffs offer is a suggestion that testimony from *GBM* "about their memberships will be relevant if Defendants challenge the associational standing of these plaintiffs." Doc. 40 at 10. But Plaintiffs barely even hint at what sort of factual challenge is likely to be raised or how testimony from *GBM* would inform the challenge. They do assert that "Alabama and Secretary Merrill have repeatedly challenged the standing of organizational plaintiffs in voting actions and courts have assessed that standing *sua sponte* in others," *id.*, but these examples, if anything, undercut their argument. First, Plaintiffs point to *GBM*, but there Plaintiffs proceeded on an entirely different theory of standing—diversion of resources. And in any event, the Secretary made only legal arguments at the pleadings stage; there were no relevant *facts*. *See supra* p. 7-8. Second, Plaintiffs cite *Alabama State Conference of NAACP v. State*, 264 F. Supp. 3d 1280, 1290 (M.D. Ala. 2017), but that decision related only to a challenge to associational standing at the pleadings stage in which the State argued that the organization's complaint failed "to identify" harmed "members or applicable interests" or allege that the organization could litigate the case "without its members' participation." Mot. to Dismiss at 50, *Ala. St. Conf. NAACP*, Case No. 2:16–CV–731–WKW, ECF 17. As in *GBM*, this was a purely legal challenge, not one turning on disputed facts. Finally, Plaintiffs note in a parenthetical that in *Alabama Legislative Black Caucus v. Alabama*, the three-judge court *sua sponte* held that "[t]he Alabama Democratic Conference presented

insufficient evidence that it has members who reside in these districts." 989 F. Supp. 2d 1227, 1292 (M.D. Ala. 2013). Of course, that *sua sponte* ruling came not because the court resolved "disputed evidentiary facts," but because the plaintiff there failed to introduce evidence. When the Supreme Court ordered the district court to give the organization a second "opportunity to provide evidence of member residence," *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 271 (2015), the district court then "directed the Democratic Conference plaintiffs to file a list of members residing in the challenged districts. They did so, and *Alabama did not file a response to that list*," *Ala. Legis. Black Caucus v. Alabama*, 231 F. Supp. 3d 1026, 1043 (M.D. Ala. 2017) (citations omitted; emphasis added).

Thus, if anything, the cases Plaintiffs cite suggest that their associational standing is unlikely to be a contested fact issue in this case. They have alleged they have members who reside in the districts they have challenged. They will presumably offer proof that members reside in those districts. And they give no reason to think that Secretary Merrill will dispute the fact that those members reside in those districts. If anything, the *ALBC* litigation suggests just the opposite.

And even assuming Plaintiffs' memberships could become a contested fact issue in this case and that Judge Maze learned something about Plaintiffs' memberships in 2017, the only possible issue in this case concerning Plaintiffs' associational standing would be whether the organizational Plaintiffs—*in 2021*—

have members in the challenged districts. Standing is assessed "at the time the action commences," *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 191 (2000), which in this case means it is assessed as of November 2021. And any knowledge Judge Maze might have about Plaintiffs' members from 2017 depositions is unlikely to be relevant to any dispute about the residency of Plaintiffs' members more than four years later.

As to the second and third asserted "disputed evidentiary facts," Plaintiffs barely try to support their argument, limiting their analysis to a single, citation-free sentence: "As to the role of race and information about turnout and registration rates by race and county, Judge Maze solicited testimony from one of the plaintiffs' experts in *GBM* on this issue and attended a deposition where the latter facts were discussed." Doc. 40 at 11. Plaintiffs do not explain what this testimony is or whether and how it could inform a dispute over an evidentiary fact. It appears that, in Plaintiffs' view, any knowledge about "the role of race" and voting practices in Alabama disqualifies its holder from presiding over voting rights litigation. This cursory attack fails for several reasons. Plaintiffs fail to explain what facts from a challenge to a 2011 photo ID law are likely to shed light on a disputed factual issue in this challenge to 2021 legislative districts. And by framing the disputed facts at such an extreme level of generality, Plaintiffs would disqualify any judge who has read newspaper articles about current events or even judicial decisions regarding

challenges to Alabama laws. There is no authority to support such a test. Indeed, a total lack of knowledge might show "lack of qualification, not lack of bias." *See Laird v. Tatum*, 409 U.S. 824, 835 (1972) (Rehnquist, J., mem.).[5]

Plaintiffs cite two cases in support of their argument, but neither case controls here. *Murray v. Scott*, 253 F.3d 1308 (11th Cir. 2001); *United States v. State of Ala.*, 828 F.2d 1532 (11th Cir. 1987). In *Murray*, Judge De Ment had personal knowledge of a specific evidentiary fact that the parties disputed in a case before him. As an attorney, he litigated against an entity that held itself out to him as a for-profit corporation; as a judge, he had to decide whether that entity held itself out as a corporation or as a non-profit. 253 F.3d at 1313. Because of that knowledge—the very fact that the parties before him disputed—the Eleventh Circuit required recusal. *Id.* Here, Plaintiffs cite no similar personal knowledge of a disputed evidentiary fact.

In *State of Alabama*, Judge Clemon likewise had specific personal knowledge of an evidentiary fact that the parties disputed in the case before him. 828 F.2d at 1545. As an attorney, Judge Clemon represented black high school principals who alleged that discrimination occurred in Alabama high schools; as a judge, he had to evaluate disputed evidence about "whether black high school principals suffered

---

[5] To the extent Plaintiffs argue that Judge Maze has personal knowledge about witnesses and their credibility, such "knowledge" is not a "disputed fact" within the meaning of § 455(b)(1). *See Parrish v. Bd. of Comm'rs of Alabama State Bar*, 524 F.2d 98, 104 (5th Cir. 1975) (en banc) ("Credibility choices are not disputed facts.").

racial discrimination." *Id.* Because Judge Clemon had personal knowledge about a specific disputed factual issue—whether black high school principals suffered racial discrimination—Judge Clemon's disqualification was "mandated." *Id.* at 1546. Again, Plaintiffs here cite no similar disputed evidentiary fact here.

Importantly, in *State of Alabama*, Judge Clemon was not required to recuse "by virtue of his background as a civil rights lawyer." *Id.* at 1543. Nor was he required to recuse because of political views he expressed as a member of the Alabama State Senate. *Id.* at 1543-44. Indeed, as set out in more detail below, "judges have frequently heard cases concerning subjects about which they have previously expressed some views." *Id.* at 1544. Instead, Judge Clemon had to recuse because of his "special extrajudicial knowledge" about specific facts at issue in the case before him. *Id.* at 1545. That concern is not present in this case.

In sum, Plaintiffs demand that Judge Maze recuse based on personal knowledge of disputed evidentiary facts that they never bother to identify. And the cases Plaintiffs cite where the Eleventh Circuit *has* required recusal underscore Plaintiffs' omissions here. Because "[a] judge should not recuse himself based upon unsupported, irrational, or tenuous allegations," *Giles v. Garwood*, 853 F.2d 876, 878 (11th Cir. 1988), Plaintiffs' motion should be denied.

II.     **Judge Maze's impartiality cannot reasonably be questioned.**

A.     **Judge Maze is not required to recuse under Section 455(a)'s appearance of partiality test because he never played a role in this case while serving as a government lawyer.**

Plaintiffs' second ground for recusal is based on Section 455(a)'s requirement that a judge "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." But that argument fails from the start, for the recusal statute directly addresses when a former government lawyer must recuse from a case, to wit, "[w]here he has served in governmental employment and in such capacity participated as counsel . . . concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. § 455(b)(3). Section 455(b)(3) thus has created a limitation on when disqualification of a government lawyer is required, and "it is unreasonable to interpret § 455(a) (unless the language *requires* it) as implicitly eliminating a limitation explicitly set forth in § 455(b)." *Liteky v. United States*, 510 U.S. 540, 553 (1994). As an attorney, Judge Maze served as counsel in governmental employment but did not participate in this proceeding or express an opinion about it. Indeed, this case began more than two years after Judge Maze left the Attorney General's Office and became a judge. Therefore, under Section 455(b)(3), Judge Maze's prior representation of Secretary Merrill (and his 2009 representation of Governor Riley) do not require recusal. That should be the end of the analysis.

16

Plaintiffs resist this conclusion by arguing that Section 455(a) independently requires Judge Maze's recusal. But the Supreme Court has already ruled that Section 455(a) is not wholly independent from Section 455(b). Instead, "when one of those aspects addressed in (b) *is* at issue," the analysis under subsection (b) controls; it would be "poor statutory construction to interpret (a) as nullifying the limitations (b) provides, except to the extent the text requires." *Liteky*, 510 U.S. at 553 n.2. "The [*Liteky*] Court was clear that, if an issue is within the scope of section 455(b), section 455(a) should not be read to require disqualification if section 455(b) does not." *In re Hawsawi*, 955 F.3d 152, 159–60 (D.C. Cir. 2020). Otherwise, it would be "all but impossible for judges with [executive branch] backgrounds to perform their judicial duties in many cases." *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 471 F.3d 1355, 1358 (D.C. Cir. 2006) (Kavanaugh, J., on Motion for Recusal). Because Judge Maze never participated in this proceeding as an attorney (and Plaintiffs do not even argue as much), Section 455 does not require his recusal.

To be sure, some judges have suggested that "rare and extraordinary circumstances arising out of prior government employment" might independently require recusal under Section 455(a). *Id.* at 1358. Such circumstances might exist where Congress "failed to consider certain types of actions or where new practices have arisen due to changes in the practice of law or other societal developments." *Perry v. Schwarzenegger*, 630 F.3d 909, 915 (9th Cir. 2011). But Secretary Merrill

is aware of no such extraordinary circumstances here, and Plaintiffs certainly haven't identified any. Thus, their motion should be denied because Section 455(b)(3) controls and that provision does not require Judge Maze's recusal.

## B. Judge Maze is not required to recuse under Section 455(a)'s appearance of partiality test.

Even focusing solely on Section 455(a), Judge Maze would not be required to recuse because his impartiality cannot reasonably be questioned. Plaintiffs insist that the "benefit of the doubt must be resolved in favor of recusal," Doc. 40 at 7-8 (citations omitted), but "there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *In re Moody*, 755 F.3d 891, 895 (11th Cir. 2014) (citation omitted). And recusal under Section 455(a) is required only where "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Id.* at 894 (citation omitted). Where, as here, Judge Maze has been a judge for more than two years and never had any involvement with this action (which is related to Acts of the 2021 Legislature), an objective observer would have no doubt about Judge Maze's impartiality.

A judge's "former representation of a litigant"—which naturally includes actions like taking depositions and reading deposition transcripts—"does not imply any need to disqualify under § 455(a) because 'his impartiality might reasonably be

questioned.'" *Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, 307 F.3d 617, 621 (7th

Cir. 2002). Instead, "t[he] norm among new appointees to the bench is that once two

years pass, perhaps even earlier, a judge is free to sit in controversies involving

former clients." *Id.* at 621-22.[6] This is the norm followed by another federal judge

who also previously worked in the Alabama Attorney General's Office:

> Before joining the bench last year as a district judge, I worked as a
> lawyer at the State of Alabama Attorney General's Office. Upon being
> nominated and confirmed to the position of district judge, I conferred
> with staff at the Committee on Codes of Conduct for the Judicial
> Conference of the United States about recusal-related issues. They
> recommended that I adopt a general policy of recusing from cases in
> which lawyers from the Alabama Attorney General's Office represent
> a party for about two years. This policy would avoid any appearance of
> partiality by allowing a reasonable time period between when I worked
> with these lawyers as a colleague and when I might rule in one of their
> cases as a judge.

*Jones v. Governor of Fla.*, No. 20-12003-B, slip op. at 2 (11th Cir. July 21, 2020)

(Brasher, J.) (voluntarily recusing during two-year window and denying as moot a

pending recusal motion).

Plaintiffs filed the Complaint in this case on November 16, 2021. Doc. 1.

Judge Maze was confirmed as a judge on June 18, 2019, more than two years before

this lawsuit began. Accordingly, Judge Maze presiding over this case fits squarely

---

[6] In one of the cases on which Plaintiffs rely, the district judge at issue purported to follow this norm by recusing himself from all matters in which his former law firm was counsel to a party for his first two years on the bench. *See Preston v. United States*, 923 F.2d 731, 734 n.5 (9th Cir. 1991). The problem there was that the judge *did not* abide by the two-year recusal-required rule in that case. The lawsuit began (and his firm represented an interested witness in the action) *before* the district's judge had been confirmed. *Id.* at 734.

within the norm for newly appointed federal judges. There is no indication that "an objective, disinterested, lay observer fully informed" of these facts would think Judge Maze's compliance with this norm evidences a lack of impartiality. *See In re Moody*, 755 F.3d at 894 (citation omitted).

In their motion, Plaintiffs compare the facts of this case to just one other case from this circuit: *Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir. 1988); *see* Doc. 40 at 11-12. In *Parker*, a district judge's law clerk played a substantial role in deciding the case. In granting summary judgment, the district judge's memorandum opinion expressly thanked his law clerk for his "careful analysis" and his "countless discussions with the Court as to how the law should be applied to the material facts" of the case. *Id.* at 1523.[7] Further, the law clerk—outside the presence of the judge— presided over a hearing between the parties. *Id.* at 1524 & n.14. After the district court granted summary judgment, the plaintiffs filed a motion for recusal because the law clerk's father was a named partner at the law firm who represented the defendants. *Id.* at 1523. The Eleventh Circuit held that the judge should have recused because "it is not unreasonable to believe that the public may come to th[e] conclusion" that the law clerk, not the judge, made the decision, *id.* at 1524, and the

---

[7] The Eleventh Circuit recognized that the same district judge had made similar, more troubling expressions of thanks to the same law clerk in another opinion. *Id.* at 1524 ("This Memorandum of Opinion was prepared by William G. Somerville, III, Law Clerk, *in which the Court fully concurs.*").

law clerk would have been required to recuse himself had he been the judge, *id.* at 1527, because his father was a partner for the law firm representing a party, *see* 28 U.S.C. § 455(b)(5)(iii).

*Parker* is thus inapposite for multiple reasons. In *Parker*, the judge's law clerk (who played an unusually prominent and public role in deciding the case) had an undisputed, *current* conflict with a law firm appearing before the court. Here, Judge Maze represented a party in a different case more than two years ago. Unlike in *Parker*, there is no allegation here that Judge Maze (or any of his employees) has any *current* conflict. Plaintiffs argue that Judge Maze's "conflict" is more severe than that of the district judge in *Parker* because the judge in *Parker* was not "directly involved" with the "conflict." Doc. 40 at 13. But Plaintiffs entirely miss the point of *Parker*'s holding. The problem there was that the judge created the appearance that he may not have been "directly involved" in deciding the case and that decision-making had instead been delegated to his conflicted law clerk. Nothing of the sort is at issue in this case.

Plaintiffs primarily contend that Judge Maze should recuse because of his involvement in *GBM*, but their arguments come up short. They again resort to framing this case and *GBM* as similar because they generally "concern[] the role of race in the voting-related policies of the State of Alabama." Doc. 40 at 14. But if Plaintiffs can require recusal by simply defining their claims more broadly when it

suits them, then Section 455 will become "a veto against unwanted judges." *In re Hawsawi*, 955 F.3d 152, 157–58 (D.C. Cir. 2020) (quoting *In re Boston's Children First*, 244 F.3d 164, 167 (1st Cir. 2001)). And if some litigation experience related to "the role of race in the voting-related policies of the State of Alabama" were grounds to recuse a judge, Plaintiffs have failed to explain why they did not seek recusal of Chief Judge William H. Pryor Jr. from his role in appointing this three-judge Court based on his past as a State government lawyer litigating such issues.

Digging deeper into the *GBM* litigation does Plaintiffs no favors. They note that as counsel for the Secretary of State, Judge Maze tested their accusation that Secretary Merrill was a white supremacist who applied Alabama's photo ID law with the intent to harm African Americans. Doc. 40 at 14. But any reasonable observer would expect a lawyer to do at least that much for his client. And no reasonable observer could conclude that such exchanges would leave the lawyer unable to later fairly evaluate whether the 2021 Alabama Legislature acted with discriminatory intent.

Plaintiffs also note that Dr. Hood provided expert testimony in *GBM* about rates of photo ID possession among Alabama voters, and that Dr. Hood is likely to testify about "racial polarization in voting in different state legislative districts." Doc. 40 at 14. In their view, because Judge Maze may have worked with Dr. Hood on the former issues, reasonable observers would think that Judge Maze cannot fairly

judge Dr. Hood's testimony about the latter issues in this case. *Id.* at 15. But "acquaintance with some of the defendants and counsel [] has been rejected as a basis for requiring the disqualification of a trial judge." *Parrish v. Bd. of Comm'rs of Alabama State Bar*, 524 F.2d 98, 102 (5th Cir. 1975). And if acquaintance with a witness were sufficient grounds, then any former federal prosecutor would be required to recuse from cases in which an agent with which she formerly worked was testifying for the United States. Plaintiffs' argument, by proving so little, proves far too much.

Finally, Plaintiffs briefly argue that Judge Maze's authorship of an amicus brief in 2009 also requires recusal because, while representing Alabama Governor Bob Riley, Judge Maze argued that Congress was wrong to "equate[] Alabama's modern government, and its people, with their Jim Crow ancestors," and "Alabama's modern governments have shown a great commitment to minority voting rights." Doc. 40 at 3. This argument should be dismissed out of hand. For one, the entire United States Supreme Court agreed with the substance of the Governor's argument. *NAMUDNO*, 557 U.S. at 202 ("Things have changed in the South."). For another, Plaintiffs' rule would require the recusal of countless judges in countless cases, and it flies in the face of consistent contrary practice. "[J]udges have frequently heard cases concerning subjects about which they have previously expressed some views," *State of Alabama*, 828 F.2d at 1544, and here, Judge Maze was expressing the views

of his *client*. Thus, as noted above, Justices Thurgood Marshall and Ruth Bader Ginsburg were celebrated civil rights attorneys who were not required to recuse from pivotal Supreme Court cases involving the VRA or Equal Protection Clause. Chief Justice Roberts is not required to recuse from *Dobbs*, despite once having signed a brief for the United States arguing for the precise outcome the State of Mississippi seeks in the pending case. And Judge Maze does not have to recuse from this case for having defended the State and its officials in cases related to voting. A contrary ruling would turn Section 455 into a tool for judge-shopping and should be rejected.

*    *    *

The organizational Plaintiffs in this case are often involved in civil rights actions in this judicial district and the Eleventh Circuit, asking the Court to make important decisions that affect Alabama. *See Greater Birmingham Ministries v. Merrill*, No. 2:15-CV-02193-LSC (N.D. Ala.); *Lewis v. Bentley*, No. 2:16-CV-690-RDP (N.D. Ala.); *Jones v. Jefferson County Board of Education*, No. 2:19-CV-1821-MHH (N.D. Ala.); *Alabama State Conference of the NAACP v. Pleasant Grove*, No. 2:18-CV-2056-LSC; *People First of Alabama v. Merrill*, No. 2:20-CV-619-AKK; *Milligan v. Merrill*, Case No. 2:21-CV-1530-AMM (N.D. Ala.) (three-judge court); *Hispanic Interest Coalition of Alabama v. Bentley*, Case No. 5:11-CV-2484-SLB (N.D. Ala.); *see also Thompson v. Merrill*, No. 2:16-CV-783-ECM (M.D. Ala.); *Alabama State Conference of the NAACP v. State of Alabama*, No. 2:16-CV-731-

24

WKW (M.D. Ala.). They ask for a rule that would apparently disqualify Judge Maze (and possibly other judges) from presiding over cases like these indefinitely. Because Section 455 does not require this result, Plaintiffs' motion should be denied.

Respectfully submitted,

*Edmund G. LaCour Jr.*

Dorman Walker (ASB-9154-R81J)
Balch & Bingham LLP
Post Office Box 78 (36101)
105 Tallapoosa Street, Suite 200
Montgomery, AL 36104
Telephone: (334) 269-3138
Email: dwalker@balch.com

**Counsel for Sen. McClendon and Rep. Pringle**

Edmund G. LaCour Jr.
(ASB-9182-U81L)
*Solicitor General*

State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130
(334) 242-7300
(334) 353-8400 (fax)
Edmund.LaCour@AlabamaAG.gov

**Counsel for Secretary of State Merrill**

## CERTIFICATE OF SERVICE

I certify that on December 30, 2021, I electronically filed the foregoing notice with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

*Edmund G. LaCour Jr.*
Edmund G. LaCour Jr.
*Counsel for Secretary of State Merrill*