FILED

2022 Jan-18  PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |
|---|---|
| JAMES THOMAS, et al., | |
| *Plaintiffs*, | |
| vs. | Case No.: 2:21-cv-1531-AMM |
| JOHN H. MERRILL, et al., | |
| *Defendants*. | |

### PLAINTIFFS' REPLY BRIEF IN SUPPORT OF RECUSAL

Defendants' opposition mischaracterizes the applicable legal standard and Plaintiffs' arguments. They take each factual basis for recusal in isolation, argue that this one fact alone doesn't provide a basis for recusal, and then lay out a parade of horribles that would follow from granting recusal based on that fact alone. But Plaintiffs do not seek Judge Maze's recusal because he formerly worked as an attorney at the Alabama Attorney General's Office. The other judges on this panel worked or interned at the same office, but Plaintiffs do not seek their recusal. Nor do they seek his recusal because he represented Secretary Merrill in litigation. Rather, recusal is required because Judge Maze, as opposed to the other judges, recently represented Secretary Merrill against two *Thomas* Plaintiffs in litigation addressing the role of race in voting-related policies, which allowed Judge Maze to

gain knowledge of material evidentiary facts likely to be at issue in this case. Defendants never rebut that these circumstances create a basis for recusal.

Defendants also criticize Plaintiffs for failing to identify specific evidentiary facts likely to be disputed in this case that arise from *Greater Birmingham Ministries v. Merrill*, 284 F. Supp. 3d 1253 (N.D. Ala. 2018), *aff'd sub nom. Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299 (11th Cir. 2021), outside of associational standing, which Defendants never pledge not to contest. Plaintiffs did identify specific facts and testimony but did not recount each possible piece of overlapping evidence because those facts are too myriad to spell out here. Nonetheless, Plaintiffs have identified examples such as testimony about the 2011 redistricting process, voter turnout, and racially polarized voting that arose in *GBM*. These same issues will likely prove relevant here given the State's primary defense in a related action that it drew the 2021 challenged districts to preserve the core of 2011 districts and because of the relevance of racially polarized voting to the racial gerrymandering inquiry.

Recusal is further required because these facts, along with Judge Maze's work with Dr. M.V. Hood III as an expert—who will be an important witness in this case—*together*, create the appearance of partiality to reasonable lay observers. Chief Justice Roberts recently explained that for the federal judiciary, "public trust is essential, not incidental, to [its] function," encouraging judges to be "scrupulously

attentive to both the letter and the spirit" of recusal rules. Chief Justice Roberts, 2021 Year-End Report on the Federal Judiciary at 3, https://www.supremecourt.gov/publicinfo/year-end/2021year-endreport.pdf. Under these circumstances, Judge Maze's extensive involvement in *GBM* threatens to undermine this important public trust.

## ARGUMENT

**I.    Defendants Fail to Rebut Plaintiffs' Showing that Judge Maze Has Extrajudicial Knowledge of Material Evidentiary Facts, Requiring His Recusal.**

Apart from their strategy of ignoring the whole mosaic of facts that require recusal,[1] Defendants mischaracterize Plaintiffs' arguments against recusal due to Judge Maze's knowledge of disputed material facts under 28 U.S.C. § 455(b)(1) in two ways. First, they misread the import of the facts that required recusal in *United States v. State of Alabama*, 828 F.2d 1532 (11th Cir. 1987), and *Murray v. Scott*, 253 F.3d 1308 (11th Cir. 2001), and similarly require recusal here. Second, they disingenuously criticize Plaintiffs for lack of specificity in defining each material fact, while refusing to commit not to challenge Plaintiffs' associational standing.

---

[1] One such argument offered by Defendants is that Justices Marshall and Ginsburg "were not required to recuse from pivotal Supreme Court cases involving the VRA or Equal Protection Clause." Defs.' Opp. 24. Beyond misstating Plaintiffs' argument, they also miss that, for decades after joining the Court, Justice Marshall did in fact recuse from multiple cases involving his former law firm, the NAACP Legal Defense Fund, relating to voting rights and other issues. *See, e.g., Missouri v. Jenkins*, 491 U.S. 274 (1989); *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788 (1985); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982); *United Jewish Orgs. v. Carey*, 430 U.S. 144 (1977); *NAACP v. New York*, 413 U.S. 345 (1973).

As to *State of Alabama*, 828 F.2d 1532, Defendants contend that Judge Clemon's recusal was required because "[a]s an attorney, [he] represented black high school principals who alleged that discrimination occurred in Alabama high schools; as a judge, he had to evaluate disputed evidence about 'whether black high school principals suffered racial discrimination.'" Defs.' Opp. 14–15. The latter statement is incorrect. The case in which Judge Clemon presided did not concern Black high school principals but rather involved racial discrimination in Alabama's college system. *State of Alabama*, 828 F.2d at 1534. In that case, the disputed evidence arose in the context of a relevancy objection to a study that described discrimination against Black high school principals. *Id.* at 1545. Yet Judge Clemon was not called upon to determine the truth of those allegations. *Id.* Instead, Judge Clemon determined only whether, assuming the plaintiffs proved such discrimination existed, it was relevant to the issues at hand. Nonetheless, the Eleventh Circuit held that Judge Clemon was required to recuse. Thus, even when the facts Judge Clemon learned arose solely in the context of a relevance objection, the appellate court deemed them sufficiently material to require recusal.

Similarly, Defendants seek to distinguish *Murray* by contending that Judge De Ment had personal knowledge of a specific disputed evidentiary fact. Defs.' Opp. 14. But that also misstates the facts there. The case in which Judge De Ment had served as counsel occurred *over thirty years* prior and Judge De Ment could not

4

"recall the specific facts about his involvement" in the 1970 litigation. 253 F.3d at 1313. Nonetheless, the Eleventh Circuit held it was proper to presume Judge De Ment's knowledge of disputed evidentiary facts that "may potentially become an issue in the present litigation," requiring recusal. *Id.* Thus, under *Murray*, recusal under Section (b)(1) does not require a judge to recall specific facts from prior litigation, nor does it require a certainty that the issue will rearise. Rather, Section (b)(1) requires recusal even where the judge would have known evidentiary facts at one time and there is a possibility that the issue may arise in the present litigation.

As to the second issue, Defendants contend that Plaintiffs have not sufficiently alleged why Plaintiff organizations' associational standing is likely to arise in this matter and whether Judge Maze had sufficient knowledge of particular evidentiary facts to matter. Yet Defendants notably do not disclaim any intent to challenge Plaintiffs' associational standing, but rather vaguely assert that the issue is "unlikely to be a contested fact issue in this case." Defs.' Opp. 12. And the Court can, of course, raise the issue of standing *sua sponte*. *See, e.g.*, *GBM*, 992 F. 3d at 1316.

Defendants also fail to rebut the fact that Judge Maze possesses a depth of specific knowledge about issues relating to the organizations' membership and other issues relating to associational standing that he would not have but-for his role in *GBM*. Not only was Judge Maze counsel in that case, he deposed the President of the Alabama NAACP *twice*, and in doing so elicited testimony about the

5

organization's membership and financials. *See* ECF No. 40-3 at 10–25, 30–32, 44–47; ECF No. 40-4 at 94–101, 127–28. It is hard to see how this knowledge of facts relating to a party's standing, which can always arise and consistently does in voting-rights' disputes, lacks materiality to the instant dispute. Indeed, the Eleventh Circuit found recusal required based on Judge Clemon's knowledge of a fact that he had to evaluate only for relevancy purposes, *State of Alabama*, 828 F.2d at 1545, and the possibility that Judge De Ment might remember a fact he learned thirty years prior that he attested he did not, *Murray*, 253 F.3d at 1313.

Defendants also fail to contend with the numerous facts beyond standing about which Judge Maze has knowledge and which are likely to arise again. For example, as to the role of race in enacting voting-related policies in the last decade in Alabama, this panel will need to evaluate whether all or some of the districts use race in a predominant manner to separate voters across districts. *See Shaw v. Reno*, 509 U.S. 630, 658 (1993). In related litigation concerning congressional districting in the 2021 cycle, Defendants have argued that the current districts preserve the cores of districts enacted in 2011. *See, e.g.*, Defs.' Proposed Findings of Fact & Conclusions of Law at 13, *Milligan v. Merrill*, No. 2:21-cv-01530-AMM, ECF No. 102 (N.D. Ala. Jan. 14, 2022). They are likely to make the same argument here. Because the Supreme Court has recognized that redrawn districts that "retain the core shape" of previously drawn districts may continue to bear the hallmarks of

racial predominance, *North Carolina v. Covington*, 138 S. Ct. 2548, 2551–53 (2018), extrajudicial knowledge about facts underlying these previous districts will likely become materially relevant here.

While *GBM* did not primarily concern redistricting, the issue of the 2011 maps arose several times over the course of the proceedings because it was relevant to discriminatory intent and to the Senate Factors courts evaluate under Section 2 of the Voting Rights Act. Defendants elicited extensive testimony, for example, from Scott Douglas of Greater Birmingham Ministries as to the State's redistricting process, ECF No. 40-5 at 70–77, including about specific state legislative districts such as Senate District 33 that is challenged here, *id.* at 71. He also answered questions about whether it was "true that some places, if you draw a district, it's just going to be 65 or 70 percent African-American," *id.* at 75, and whether the legislature was "intentionally violating the law when they did a redistricting plan, or were they mistaken about what the [VRA] required," *id.* at 76. These issues will almost certainly arise in this case, especially given the State's defenses.[2] Judge Maze's knowledge of facts concerning these disputes from prior litigation in which he represented the Secretary have material relevance to this case.

---

[2] Plaintiffs are also strongly considering amending their complaint to assert claims of vote dilution under Section 2 of the Voting Rights Act and intentional discrimination under the Fourteenth Amendment. If they do so, these issues will become even more front and center in the litigation.

Defendants also neglect to address the reports and testimony by Dr. Kousser, who Judge Maze deposed, about racially polarized voting, ECF No. 40-7, and from Dr. Hanjal about county-level voting turnout as linked to racial demographics. ECF No. 40-6 at 21–25, 37–39. If Plaintiffs prove that Defendants drew the lines of the challenged districts using race as the predominant factor, Defendants will need to argue that they were narrowly tailored to comply with the Voting Rights Act and thus survive strict scrutiny. *Cooper v. Harris*, 137 S. Ct. 1455, 1464 (2017). This will depend on showing a "pre-enactment analysis with justifiable conclusions" of what the VRA demands. *Abbott v. Perez*, 138 S. Ct. 2305, 2335 (2018). This analysis for the 2021 cycle was conducted by Dr. Hood, also a defense expert in *GBM*, and relates to what levels of Black Voting Age Population are necessary for Black voters to elect candidates of choice. The facts testified to by Dr. Kousser and Dr. Hanjal have direct relevance to this inquiry, as differing levels of racial polarization and Black turnout by county affect what percentage of Black voters are necessary to effectively select chosen candidates. Judge Maze has direct knowledge of those facts through his role in *GBM*. This knowledge was more than was required to mandate recusal of Judge De Ment in *Murray*. 253 F.3d at 1313.

The Eleventh Circuit's decisions in *State of Alabama* and *Murray* in combination with the facts here compel Judge Maze's recusal.

**II.    Section 455(a) Applies Under These Circumstances and Warrants Recusal.**

    **A.    Recusal is required when a judge's impartiality might reasonably be questioned under 455(a) even when the judge actually lacks knowledge of material, disputed facts.**

Section 455(a) requires judges to disqualify themselves "in any proceeding in which [their] impartiality might reasonably be questioned," whereas Section 455(b) provides a more specific list in which judges "shall *also* disqualify [themselves] in the following circumstances." 28 U.S.C. § 455(a), (b). Defendants distort language in *Liteky v. United States*, which merely notes that "455(a) expands the protection of § 455(b), but duplicates some of its protection as well," and "[w]ithin the area of overlap, it is unreasonable to interpret § 455(a) (unless the language *requires* it) as implicitly eliminating a limitation explicitly set forth in § 455(b)." 510 U.S. 540, 552–53 (1994). From this principle, Defendants urge that because 455(b) contains a subsection addressing former government lawyers, and Judge Maze's conflict arises from his work as such, this subsection nullifies 455(a). This reading misunderstands *Liteky* and misapplies the principles to this case.

First, Plaintiffs do not seek Judge Maze's recusal under Section 455(b)(3), which governs work as a government attorney in the same proceedings as the case at issue, but under 455(b)(1), which concerns "personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Thus, Defendants extend the principle they purport to apply from *Liteky* not only to nullify

455(a), but also any other subsection of 455(b). They offer no precedent or other support for this counter-textual interpretation because none exists.

Second, they ignore that the Supreme Court has held that although Section 455(a) cannot impose additional *substantive* requirements in the relevant section on 455(b), nonetheless, the "'objective appearance' principle of subsection (a) makes irrelevant the subjective limitation of (b)(1): The judge does not have to be *subjectively* biased or prejudiced, so long as he *appears* to be so." *Liteky*, 510 U.S. at 553 n.2. Instead, *Liteky* was concerned with allowing subsection (a) to eliminate "the longstanding limitation of (b)(1)" that the standards therein do "not consist of a disposition that fails to satisfy the 'extrajudicial source' doctrine." *Id.* Here, there is no dispute that the basis for Judge Maze's recusal all arise from the extrajudicial source of his prior work at the Alabama Attorney General's office. Moreover, *Liteky* did not overrule the Court's decision in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859 (1988), where it held that "Congress intended to require knowledge under subsection (b)(4) and not to require knowledge under subsection (a)."

*Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 471 F.3d 1355, 1357 (D.C. Cir. 2006), which Defendants also rely upon, did not hold that subsection (b) overrides the objective requirement in subsection (a). That case also concerned the government-employment part of subsection (b), which is not at issue here. *Id*.

Rather, it held that when recusal was sought under Section (b)(3), it would be rare to have other situations arise that would create an appearance of partiality outside of what that subsection contemplates.

Indeed, courts have repeatedly analyzed whether recusal is required under subsection (a) even when the issues arise primarily under subsection (b). *See, e.g.*, *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998) ("Obviously, it is possible for facts to indicate that a judge *might* be biased such that recusal is required under § 455(a) even though none of those facts indicates actual bias necessitating recusal under § 455(b)."); *United States v. Siegelman*, No. 2:05CR119-F, 2005 WL 8161266, at *7 (M.D. Ala. Nov. 10, 2005) (citing *Liteky* but analyzing whether the conflict alleged under subsection (b) nonetheless would create an appearance of partiality under subsection (a)).

Defendants' argument would read subsection (a) and much of subsection (b) out of the recusal statute. But no court has ever adopted Defendants' reading of the recusal statute and the Supreme Court strongly counsels against "treat[ing] statutory terms as surplusage in any setting." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (cleaned up). Because Defendants have offered no basis for adopting their novel interpretation, this Court must reject it.

**B.**      **Judge Maze's extensive involvement in recent litigation involving the same parties, a common key witness, and overlapping issues create a likelihood the public reasonably will perceive partiality.**

In addressing Plaintiffs' argument that the appearance of partiality requires recusal even if Judge Maze does not have subjective knowledge of material disputed facts, Defendants launch a series of scattershot arguments designed to avoid looking at all of the facts together. They also imply bad faith by the Plaintiffs and suggest negative consequences if recusal is required here. None of these volleys land.

For one, Defendants ignore the combination of facts that, together, create an appearance of partiality. Judge Maze represented the same primary defendant against two of the same plaintiffs as recently as two-and-a-half years ago in a just-resolved case involving overlapping issues about the role of race in Alabama's voting-related laws. In that case, Judge Maze personally questioned NAACP President Simelton about whether he or the Alabama NAACP believed Secretary Merrill harbored racist and white supremacist views, and expressed skepticism that he had a basis for that conclusion. ECF No. 40-4 at 33–35. Defendants contend that he was just doing his job as counsel in that case, and that is true. But that does not negate the perception of partiality that arises from this level of involvement and that line of questioning when the parties in the case are the same.

Defendants also minimize the importance of Dr. Trey Hood serving as an expert for Judge Maze and Defendants in *GBM* and a material witness (and

potentially expert) as well here, arguing that Dr. Hood's credibility is not a material fact. Defs.' Opp. 14 n.5. Even if true, this does not undermine the *appearance* of partiality created by having a individual who recently retained and relied upon the testimony of an expert witness in defending his case now evaluate the expertise and credibility of that individual expert as an important witness in the present case. Federal courts have repeatedly questioned Dr. Hood's credibility as an expert. *See, e.g.*, *Ohio A. Philip Randolph Inst. v. Householder*, 373 F. Supp. 3d 978, 1049 (S.D. Ohio 2019) (three-judge court), *vacated on other grounds remanded,* 140 S. Ct. 101 (2019); *Ne. Ohio Coal. for the Homeless v. Husted*, No. 06-cv-896, 2016 WL 3166251, at *23 (S.D. Ohio June 7, 2016); *Veasey v. Perry*, 71 F. Supp. 3d 627, 663 (S.D. Tex. 2014); *Florida v. United States*, 885 F.Supp.2d 299, 323–26 (D.D.C. 2012) (three-judge court). And so, the issue is certain to arise again here.

Defendants largely ignore or miss the point of the cases cited by Plaintiffs. Defendants attempt to dismiss *Preston v. United States*, 923 F.2d 731 (9th Cir. 1991) in a footnote. They argue that the problem there arose because "the judge *did not* abide by the two-year recusal-required rule in that case." Defs.' Opp. 19 n.6. But the Ninth Circuit stated that it saw "no need to delve into the precise nature of the previous relationship between Judge Letts and Latham & Watkins" and did not decide his recusal was required on that ground. *Preston*, 923 F.2d at 734 n.5. Rather, it held that his impartiality might reasonably be questioned because of a contractual

13

clause that could make the clients of the judge's former law firm subject to an indemnification claim if the court had ruled against the government. *Id.* at 735. Thus, the basis of this appearance of partiality involved a non-party and a previous case in which the judge was never personally involved, as opposed to overlapping parties and Judge Maze's direct involvement in the litigation here.

Defendants also contend that the primary reason for disqualification in *Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir. 1988), was "that the judge created the appearance that he may not have been 'directly involved' in deciding the case and that decision making had instead been delegated to his conflicted law clerk." Defs.' Opp. 21. While the court did express concern about that delegation, the delegation alone did not create the basis for recusal under the statute but rather the law clerk's father working at the firm representing one of the parties. Defendants further argue that the issue in *Parker* was a current conflict, because the clerk's father was still a partner in one of the law firms representing a party, whereas here, Judge Maze has only a former conflict given that *GBM* has now resolved. But the statute provides no basis for this distinction. Rather, *Parker* required recusal under the appearance of impropriety based on the judge's law clerk having a father who worked for a law firm involved in this case (even though the clerk's father was not personally involved). In this case, Judge Maze has a greater degree of connection,

14

having served as counsel to a party in this case and as opposing counsel to two other parties also present here in a case involving overlapping material facts and issues.

Finally, Defendants argue against recusal by implying that Plaintiffs are attempting to use a heckler's veto and that requiring recusal would have far-reaching consequences for other cases. As to the former, Defendants imply that by seeking the recusal of Judge Maze, but not of Chief Judge Pryor who selected the panel, Plaintiffs' inconsistency shows signs of selectively trying to strike unfavorable jurists despite both having served with the Alabama Attorney General's office. Defs.' Opp. 22. But Plaintiffs have not been selective. Judge Newsom and Judge Manasco both also spent varying degrees of time either working or interning for the Alabama Attorney General's Office. Plaintiffs have not sought the recusal of Judge Manasco, Judge Newsom, or Chief Judge Pryor because none of those judges ever played any role in the *GBM* litigation or otherwise obtained knowledge of any relevant facts likely to be at issue here.

Defendants also imply that outside of a two-year window, requiring recusal for former government lawyers will have negative downstream effects. Defs.' Opp. 18–20. Yet just because Judge Maze now is a few months outside of this two-year window of recusing from *all* cases involving his former colleagues does not mean that recusal will *never* be required based on his prior employment. While Defendants cite the involvement of the Alabama NAACP and GBM in several civil rights cases,

15

Judge Maze will not necessarily need to recuse in other cases involving those parties. The specific facts here require a different conclusion due to the combination of the same set of plaintiffs and defendants, overlapping material issues and facts, and Judge Maze's personal and extensive involvement in the prior litigation. For example, Plaintiffs do not seek Judge Maze's recusal because he worked at the Alabama Attorney General's Office when they defended the prior state legislative racial gerrymandering case, *Alabama Legislative Black Caucus v. Alabama*, because he did not personally work on that case. His direct involvement in *GBM* is what requires a different conclusion.

## CONCLUSION

Defendants have failed to engage with the heart of Plaintiffs' authorities and facts showing that recusal is required and have certainly not rebutted them. The Court should require Judge Maze's recusal from this matter.

DATED this 18th day of January 2021.

 /s/ *Sidney Jackson*
Sidney Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
WIGGINS, CHILDS, PANTAZIS, FISHER & GOLDFARB
301 19th Street North
Birmingham, AL 35203
(205) 314-0500
sjackson@wigginschilds.com

Respectfully submitted,

*/s/ Davin M. Rosborough*
Davin M. Rosborough*
Julie A. Ebenstein*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
New York, NY 10004
(212) 549-2500
drosborough@aclu.org
jebenstein@aclu.org

16

nlawsen@wigginschilds.com

Deuel Ross*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300
dross@naacpldf.org

Leah Aden*
Stuart Naifeh*
Kathryn Sadasivan^ (ASB-517-E48T)
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
laden@naacpldf.org
snaifeh@naacpldf.org
ksadasivan@naacpldf.org

Jessica L. Ellsworth*
Shelita M. Stewart*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
jessica.ellsworth@hoganlovells.com
shelita.stewart@hoganlovells.com

David Dunn*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

LaTisha Gotell Faulks (ASB-1279-I63J)
Kaitlin Welborn*
AMERICAN CIVIL LIBERTIES UNION OF
ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
tgfaulks@aclualabama.org
kwelborn@aclualabama.org

Caren E. Short (ASB-0646-P48N)
Jack Genberg*
Liza Weisberg*
SOUTHERN POVERTY LAW CENTER
PO Box 1287
Decatur, GA 30031
(404) 521-6700
caren.short@splcenter.org
jack.genberg@splcenter.org
liza.weisberg@splcenter.org

Michael Turrill*
Harmony R. Gbe*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4600
michael.turrill@hoganlovells.com
harmony.gbe@hoganlovells.com

Blayne R. Thompson*
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
blayne.thompson@hoganlovells.com

*Attorneys for Plaintiffs*

Janette McCarthy Wallace**
Anthony Ashton**
Anna-Kathryn Barnes**
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE
(NAACP)
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org

*Attorneys for Plaintiff Alabama State*
*Conference of the NAACP*

* Admitted *pro hac vice*
** Motion for admission *pro hac vice*
pending or to be filed
^Request for admission to the Northern
District of Alabama forthcoming

18

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed a copy of the foregoing with

the Clerk of Court using the CM/ECF system which provides electronic notice of

filing to all counsel of record.


This the 18th day of January, 2022.

*/s/ Davin Rosborough*