FILED
2023 Mar-07 PM 03:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JAMES THOMAS, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-1531-AMM |
| | ) | |
| WES ALLEN, in his official capacity as Alabama Secretary of State,[1] *et al.*, | ) | **THREE-JUDGE COURT** |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION TO MODIFY STAY (DOC. 71)**

Though they don't quite acknowledge it, Plaintiffs ask this Court to reconsider its reconsideration of its order staying this case. Plaintiffs' motion repeats several of the arguments they made at the status conference on May 20, 2022, but those arguments did not persuade this Court to lift the stay then. Nor have Plaintiffs shown that this Court should lift the stay now. Plaintiffs point to only one changed circumstance they claim justifies doing so: that Defendants consented to some limited discovery in cases challenging congressional redistricting. Thus, Plaintiffs reason, Defendants must do so here too. But Plaintiffs fail to appreciate both the significant showing that they must (but do not) make to seek a modification of this

[1] Secretary Allen assumed office on January 16, 2023, and is automatically substituted pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Court's stay and the significant differences in both the burdens and urgency between the different sets of cases. Plaintiffs' motion should be denied.

As an initial matter, Plaintiffs face a steep burden to show that this Court should lift its stay. "A district court has 'general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice.'" *Marti v. Iberostar Hoteles y Apartamentos S.L.*, 54 F.4th 641, 646, 649 (11th Cir. 2022) (quoting *Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976)). Given this broad discretion, "appellate courts will rarely interfere with stay orders." *Id.* at 649. Such intervention is warranted only if the stay is "immoderate," which requires consideration of two factors: (1) "the scope of the stay (including its potential duration)"; and (2) "the reasons cited by the district court for the stay." *Id.* (quoting *Ortega Trujillo v. Conover & Co. Comm'cns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000)).

Plaintiffs largely eschew this framework, instead focusing on changed circumstances. But looking to the first factor, while true that the case is currently stayed, the stay will require reevaluation by its own terms once the Supreme Court rules in the congressional redistricting cases. *See* Doc. 61 ("No later than two weeks after a ruling by the Supreme Court in those cases, the parties shall file a Joint Status Report advising the court of the impact of such ruling, so that the court may then proceed with a scheduling conference and a scheduling order."). Based on

established Supreme Court practice, its ruling (and thus this Court's reevaluation of the stay) will come no later than June; a far cry from the unbounded stays at issue in *Ortega Trujillo* and *Marti*, which were challenged on appeal before they ever expired. At this point, the limited scope of the stay remaining also undercuts Plaintiffs' assertions that the evidence will go stale or that they may not be able to seek special elections[2] if the stay is not lifted now. The scope of the stay is thus not immoderate.

As to the second factor, Plaintiffs have already contested and been heard regarding the reasons for staying this case pending the Supreme Court's ruling in the congressional redistricting cases. While those reasons need not be rehashed in detail here, proceeding with piecemeal discovery now given the inherent connections between redistricting claims based on either § 2 or the Equal Protection Clause (particularly when guidance from the Supreme Court is no more than a few months

[2] Separately, Plaintiffs' passing assertion that they might be entitled to special elections does not reduce their burden. Special elections are an extraordinary remedy that requires consideration of, among other things, "the severity and nature of the particular constitutional violation, the extent of the likely disruption to the ordinary processes of governance if early elections are imposed, and the need to act with proper judicial restraint when intruding on state sovereignty." *North Carolina v. Covington*, 581 U.S. 486, 488 (2017); *see also Covington v. North Carolina*, 270 F. Supp. 3d 881, 901-02 (M.D.N.C. 2017) (denying, on remand from previously cited case, request for special elections despite "widespread, serious, and longstanding nature of the constitutional violation at issue"). It is also worth noting that the cores of the state legislative districts are based on remedial plans passed in response to *Alabama Legislative Black Caucus v. Alabama*, all objections to which were rejected by that three-judge court in 2017. *See* Case Nos. 2:12-cv-691, 2:12-cv-1081, 2017 WL 4563868 (M.D. Ala. Oct. 12, 2017). Here, Plaintiffs are not likely to show an entitlement to special elections no matter when this case proceeds. Regardless, their unsupported invocation of that remote possibility does not warrant lifting the stay.

away) is not in the interest of justice or judicial economy. Plaintiffs instead point to "changed circumstances"—that discovery is proceeding in the congressional redistricting cases—to justify lifting the stay now.

But while Plaintiffs acknowledge several ways that this case is similar to the congressional redistricting cases (which supported issuing the stay in the first place), they fail to mention the ways in which the cases are different (which justify again declining to lift the stay now). For example, Alabama has just 7 congressional districts, but 140 state legislative districts. True, Plaintiffs do not challenge all of those districts, *just* State Senate Districts 7, 11, 12, 18, 19, 20, 21, 24, 25, 26, and 33 as well as State House Districts 52, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 70, 71, 72, 75, 76, 78, 98, 99, 101, and 103. *See* Doc. 57 at 59-57. By contrast, the *Milligan* plaintiffs (represented by many of the same counsel as Plaintiffs here) focus on just four districts. *See Milligan* Doc. 1 ¶¶ 197-201. Even putting aside the cascading effects that districting changes necessarily have on the whole map, the burdens imposed by discovery regarding 32 state legislative districts—necessarily involving both more and different potential witnesses, incumbents, statistics, historical maps, communities of interest, previous litigation, etc.—is plainly much greater than that required for just 4 congressional districts.

Another key distinction is the timing of congressional and state legislative election cycles (and how that accordingly impacts the timing of these suits). While

congressional elections occur every two years, state legislative elections occur only every four years. So while there's a regularly scheduled congressional election *next* year, the next state legislative election is not until 2026. In recognition of the relevant state law deadlines, the cases challenging congressional redistricting are set for trial in late July. But that trial date limits time for conducting discovery, so Defendants agreed in good faith to take on some additional discovery burdens before the Supreme Court's ruling to mitigate the risk that the parties will have to engage in a considerable amount of discovery on a compressed timeframe. Those sorts of time pressures are not present in this case.

In sum, the Court should not lift its stay. There is ample time to complete discovery in this case after the Supreme Court rules, and the discovery Plaintiffs will request here is likely to be more burdensome than the discovery in the congressional redistricting cases. Plaintiffs have not carried their heavy burden to show that justice or judicial economy would be better served by proceeding with piecemeal discovery now rather than waiting a few more weeks or months (at most) for the Supreme Court's definitive guidance (which may impact the course of discovery going forward). Plaintiffs' motion should be denied.

Respectfully submitted,

Steve Marshall
*Attorney General*

Edmund G. LaCour Jr. (ASB-9182-U81L)
*Solicitor General*

James W. Davis (ASB-4063-I58J)
*Deputy Attorney General*

A. Barrett Bowdre (ASB-2087-K29V)
*Deputy Solicitor General*

/s/ Brenton M. Smith
Misty S. Fairbanks Messick (ASB-1813-T71F)
Brenton M. Smith (ASB-1656-X27Q)
A. Reid Harris (ASB-1624-D29X)
Benjamin M. Seiss (ASB-2110-O00W)
*Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

***Counsel for Secretary Allen***

Dorman Walker (ASB-9154-R81J)
BALCH & BINGHAM LLP
Post Office Box 78 (36101)
105 Tallapoosa Street, Suite 200
Montgomery, AL 36104
Telephone: (334) 269-3138
Email: dwalker@balch.com

***Counsel for Sen. McClendon and Rep. Pringle***

## CERTIFICATE OF SERVICE

I certify that on March 7, 2023, I electronically filed the foregoing notice with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

/s/ Brenton M. Smith
*Counsel for Secretary Allen*