FILED
2023 Oct-13  PM 05:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| LAQUISHA CHANDLER, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-1531-AMM |
| | ) | |
| WES ALLEN, *et al.*, | ) | **THREE-JUDGE COURT** |
| | ) | |
| *Defendants*. | ) | |

### DEFENDANTS REP. PRINGLE'S AND SEN. LIVINGSTON'S
### REPLY IN SUPPORT OF MOTION TO DISMISS

In addition to the reasons laid out in Defendants' Reply in Support of Motion to Dismiss, (Doc. 117), Defendants Rep. Chris Pringle and Sen. Steve Livingston in their official capacities as House and Senate Chairs of the Alabama Legislature's Permanent Legislative Committee on Reapportionment (the "Chairs" and the "Committee") are due to be dismissed from this action because: (1) They have legislative immunity from suit; and (2) Plaintiffs lack standing to sue the Chairs.

As a threshold matter, Plaintiffs do not contest either that the Chairs are generally entitled to legislative immunity or that such immunity would bar Plaintiffs' suit here. (*See generally* Doc. 115 at 43–46.) Instead, Plaintiffs opposition exclusively argues that the Chairs have waived their right to legislative immunity. The Chairs have not waived their right to assert legislative immunity, though, because:

- This case was stayed for over 15 months, (*cf.* Docs. 059 and 075), and "the passage of time alone is insufficient to establish" waiver, *In re Crowley*, 568 B.R. 835, 837 (M.D. Ala. 2017);

- This case remains at its beginning stages. Preliminary motions have not yet been heard, discovery has not yet begun, and the Plaintiffs cannot show "undue prejudice," *U.S. v. Barfield*, 396 F. 3d 1144, 1150 (11th Cir. 2005);

- A statement by counsel that the Chairs intended to waive legislative immunity does not itself waive such immunity; and

- The Chairs have not extensively engaged in litigation. The Chairs did not intervene, very little litigation has occurred due to the stay, and their sole litigation conduct involves engagement in two threshold procedural motions – a motion to stay and a motion to recuse – and filing an answer to a now-inoperative Complaint that was brought against a different defendant.

As such, this case is distinguishable from *Singleton v. Merrill*, 576 F. Supp. 3d 931 (N.D. Ala. 2021), and legislative immunity applies.

Further, Plaintiffs lack Article III standing to sue the Chairs because the Chairs cannot provide the relief sought by the Plaintiffs in their Third Amended Complaint.

## LEGAL STANDARD

When "state legislators [are acting] in their legislative capacities, they are entitled to absolute legislative immunity." *Scott v. Taylor*, 405 F.3d 1251, 1257 (11th 2005). If a legislator may waive legislative immunity, "waiver can be found only after explicit and unequivocal renunciation of the protection. The ordinary rules for determining the appropriate standard of waiver do not apply in this setting." *United States v. Helotski*, 442 U.S. 477, 490–91 (1979).

"To have a case or controversy, a litigant must establish that he has standing, which requires proof of three elements.  The litigant must prove (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Florida Secretary of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (citations and quotation marks omitted).

## ARGUMENT

### I.   It Is Undisputed That Legislative Immunity Would Normally Bar Plaintiffs' Suit Against The Chairs.

In their Motion to Dismiss, (Doc. 093), the Chairs argued that, under the doctrine of legislative immunity, they are "absolutely immune from liability for their legislative activities." (*Id.* at 4) (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 48–49 (1998)). The Chairs further argued that the "challenged activities of the Chairs" under the Third Amended Complaint, (Doc. 083), "were necessarily legislative." (Doc. 093 at 5.) On that basis, the Chairs argued that legislative immunity applied, and that Plaintiffs' suit against the Chairs was due to be dismissed. (*Id.* at 4–7.)

Plaintiffs' do not contest these premises. Instead, Plaintiffs rely exclusively on arguments that the Chairs have waived their immunity. As such, it is undisputed that, on the face of the Complaint, legislative immunity should apply. The sole question before this Court is whether an exception applies due to waiver. It does not, because no waiver has occurred.

3

## II.      The Chairs Have Not Waived Legislative Immunity.

Plaintiffs' make three arguments that the Chairs have waived immunity:

(1) Legislative immunity should not apply because this case has been pending for "nearly two years," (Doc. 115 at 43);

(2) The Chairs have waived immunity by "actively participating in the litigation," (*id.*); and

(3) The Chairs "explicitly waived any privilege in these proceedings," (*id.*).

Each of these arguments fails. First, the mere passage of time does not waive the privilege, and Plaintiffs cannot show any harm from the delay given the early stage of this case. Second, unlike in *Singleton v. Merrill*, 576 F. Supp. 3d 931 (N.D. Ala. 2021), the Chairs have not engaged in "extensive litigation conduct," *id.* at 941. And third, counsel's statements at an early status conference concerning the Chairs' intent does not itself affect a waiver—particularly where there is a new operative complaint and a new defendant.

### a. *The mere passage of time does not waive the Chairs' legislative immunity.*

Plaintiffs first raise a laches-style argument that, because this case has been pending for "nearly two years," the Chairs should now be barred from raising the legislative immunity. (Doc. 115 at 43); (*see also id.* at 44).

First, Plaintiffs' laches argument applies the wrong waiver standard because as the U.S. Supreme Court has held in *United States v. Helotski*, 442 U.S. 477, 490–91 (1979), "waiver can be found only after **explicit and unequivocal** renunciation

of the protection [of legislative immunity]. The ordinary rules for determining the appropriate standard of waiver do not apply in this setting." (Emphasis added). The passage of time, alone, is not "explicit and unequivocal renunciation of the protection." *Id. See also In re Crowley*, 568 B.R. 835, 837 (M.D. Ala. 2017).

Second, even if a delay could effect a valid waiver of legislative immunity—and Plaintiffs' point to no case holding such—there would still be no waiver here. In the analogous context of laches, for instance, waiver does not apply until "(1) there was a delay in asserting a right or claim, (2) the delay was not excusable, and (3) the delay caused [the party] undue prejudice." *U.S. v. Barfield*, 396 F. 3d 1144, 1150 (11th Cir. 2005). The procedural history of this case demonstrates that Plaintiffs cannot meet either the second or third prong of this test.

The original Complaint was filed on November 16, 2021. (Doc. 001.) However, the case was stayed in March 2022, (Docs. 59 and 61), and remained stayed until June 9, 2023. (Doc. 075.) Plaintiffs did not file their Third Amended Complaint until July 10, 2023, (Doc. 083), and the Chairs promptly responded with the instant motion to dismiss on July 24, 2023. (Doc. 093.) As such, while the Chairs' motion was filed roughly 20 months after the original Complaint, this case was stayed for roughly 15 of those months, and the Chairs' motion was filed within two weeks of the Third Amended Complaint. Any delay was excusable. *Barfield*, 396 F. 3d at 1150.

Further, this case remains in its nascent stages, and thus Plaintiffs cannot show "undue prejudice." *Id.* The stay on this case was lifted on June 9, 2023, (Doc. 075); Plaintiffs' Third Amended Complaint was filed on July 10, 2023, (Doc. 083); this Court has yet to hear or rule on any motion to dismiss; and discovery has not yet begun. As such, Plaintiffs cannot demonstrate that any "delay" by the Chairs in raising legislative immunity has caused them *any* prejudice, much less "undue prejudice." *Id.* The Chairs' motion to dismiss was timely raised.

### b. The Chairs have not waived legislative immunity by "extensive litigation conduct."

In an effort to analogize the current case to *Singleton v. Merrill*—where this Court held that Rep. Pringle and Sen. McClendon were not entitled to legislative *privilege* because they had waived the privilege through "extensive litigation conduct," (*id.* at 941)—Plaintiffs argue that "[t]he Chairs have affirmatively and actively sought to defend the legislation throughout this litigation." (Doc. 115 at 44–45.) Plaintiffs then, in a footnote, direct this Court to the fact that Rep. Pringle and Sen. McClendon (acting as then-Senate Chair of the Committee): (a) joined in opposing Plaintiffs' Motion to Recuse, (Doc. 045); (b) answered Plaintiffs' original Complaint, (Doc. 053); and (b) joined in opposing Plaintiffs' Motion to Modify the stay then in place in this case, (Doc. 073). These are <u>not</u> examples of "extensive litigation conduct" like those considered by this Court in *Singleton*.

At the outset, the Chairs note that legislative immunity is a "*personal* defense" to each legislator. *Scott v. Taylor*, 405 F.3d 1251, 1254–55 (11th Cir. 2005) (emphasis added). *See also Brown v. New York*, 975 F. Supp. 2d 209, 228 (N.D.N.Y. 2013) ("legislative immunity is a personal defense . . ."). As such, because each individual legislator holds the privilege, that legislator's privilege can only be waived by themselves. *See*, *e.g.*, *United States ex rel. Heesch v. Diagnostic Physicians Group, P.C.*, 2014 WL 12603513, *1–2 (S.D. Ala. Jun. 25, 2014) (upholding attorney-client privilege where party argued that it was "the owner of the privilege, and as a result, [third-party] cannot waive [party's] privilege without its consent."). That is noteworthy here because Sen. Livingston was not a party to any of the pleadings that Plaintiffs claim waived legislative privilege. (*See* Docs. 045, 053, and 073.) Sen. McClendon was Senate Chair of the Committee at the time of each of those pleadings, and while Sen. Livingston is now Senate Chair, he still was not formally named as a party in the Third Amended Complaint. (*See* Doc. 083 at 6) (naming Sen. McClendon, not Sen. Livingston). As such, it is indisputable that Sen. Livingston has not waived legislative immunity.

Neither has Rep. Pringle or—to the degree it continues to matter—Sen. McClendon. As noted above, "waiver can be found only after **explicit and unequivocal** renunciation of the protection [of legislative immunity]. The ordinary rules for determining the appropriate standard of waiver do not apply in this setting."

*United States v. Helotski*, 442 U.S. 477, 490–91 (1979) (emphasis added). Rep. Pringle's and Sen. McClendon's joinder in arguments concerning threshold procedural matters does not reach this (high) threshold.

For instance, courts routinely consider litigation participation-based waiver under the similar standard of "clear and unequivocal" in the context of removal. *See*, *e.g.*, *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1260–61 (11th Cir. 1999) (noting that "litigation-based waivers" usually require "clear and unequivocal" evidence that a party intended to waive a right); *Fain v. Biltmore Securities, Inc.*, 166 F.R.D. 39, 40 (M.D. Ala. 1996). In that context using a similar standard, courts have held that a litigation-based waiver is only "clear and unequivocal" if a party "tak[es] some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal . . . ." *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246 (11th Cir. 2004) (quoting Charles A. Wright, *et al*., 14B FEDERAL PRACTICE & PROCEDURE § 3721 (2003)). Lower courts have held that "As a general rule, the right of removal is not lost [*i.e.*, no litigation-based waiver occurs] by action in the state court **short of proceeding to an adjudication on the merits**." *Hamilton v. Sterling Bank*, 2016 WL 7017409, *2 (M.D. Ala. Nov. 29, 2016) (quoting, ultimately, *Beighley v. Federal Deposit Ins. Corp.*, 868 F.2d 776, 782 (5th Cir.1989)) (emphasis added). Put differently, if a

party's actions "were for the purpose of preserving the status quo," *Fain*, 166 F.R.D. at 40, no litigation-based waiver has occurred.

Here, none of Rep. Pringle's and Sen. McClendon's filings amounted to a "substantial offensive or defensive action." *Yusefzadeh*, 365 F.3d at 1246. Instead, they were each "for the purpose of preserving the status quo," *Fain*, 166 F.R.D. at 40, or "w[ere] dictated by the rules of [this] Court." *Yusefzadeh*, 365 F.3d at 1246 (citation omitted). For instance, Rep. Pringle's and Sen. McClendon's joinder in opposing Plaintiffs' Motion to Recuse, (Doc. 045), was purely in response to Plaintiff's motion, (Doc. 040); was dictated by this Court's briefing schedule, (Doc. 041); and was to preserve the *status quo* of a threshold issue—which judges were assigned to this case, and as such, which judges might rule on a motion involving the merits, such as the Chairs' Motion to Dismiss based on legislative immunity.

Similarly, Rep. Pringle's and Sen. McClendon's joinder in opposing Plaintiffs' Motion to Modify the stay then in place in this case, (Doc. 073), concerned a purely procedural matter. It was not a "substantial offensive or defensive action." *Yusefzadeh*, 365 F.3d at 1246.

Nor was Rep. Pringle's and Sen. McClendon's answer to the Plaintiffs' original Complaint a "substantial offensive or defensive action" that would trigger a litigation-based waiver. *Yusefzadeh*, 365 F.3d at 1246. *See also Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1010 at n.13 (11th Cir. 1992) (holding that legislators

9

were entitled to legislative immunity even though they first filed an answer in which they failed to raise legislative immunity as a defense). The Eleventh Circuit held in *Yusefzadeh*, for instance, that "filing a motion or answer in compliance with state civil procedure does not equate to litigating on the merits." *Id.* at 1245. Answers are required by the Federal Rules of Civil Procedure, and thus parties are required to file them in order to avoid being in default. Rep. Pringle and Sen. McClendon did so. Since that time, however, Plaintiffs have filed three amended complaints, to which the Chairs have either not responded at all or, in the case of the Third Amended Complaint, responded with the instant motion to dismiss based on legislative immunity. That is not waiver.

Comparing this (thin) conduct to this Court's opinion in *Singleton* highlights the point. In *Singleton*, this Court noted that the Chairs: (1) voluntarily intervened in the case; (2) intervened for the express purpose of asserting factual and legal defenses; (3) did not move to dismiss either *Singleton* or *Milligan*; and (4) "answered fully in both cases." *Singleton*, 576 F. Supp. 3d at 940–41. Here, by contrast, the Chairs: (a) did not intervene, but were sued as original defendants; (b) have not made any statements about their indispensability to this case; (c) have filed the instant motion to dismiss; and (d) answered the original Complaint, but did not answer the First or Second Amended Complaints, and moved to dismiss the Third Amended Complaint. *Singleton* is not on point, and there has been no litigation-based waiver.

### c. Counsel's statements at a status conference concerning Rep. Pringle's and Rep. McClendon's intent do not constitute a waiver.

Finally, the Chairs and counsel acknowledge that at a status conference on May 20, 2022, in response to a question concerning legislative immunity from Judge Manasco, counsel for the Chairs indicated that the Rep. Pringle and Sen. McClendon "have obviously waived their immunity." (*See* Doc. 115-1 at 19:1–10.) Counsel's statement, however, does not affect a waiver in and of itself—nor have Plaintiffs pointed to any cases suggesting the contrary.

The Chairs again note that the legislative privilege is a "*personal* defense" to each legislator, *Scott*, 405 F.3d at 1254–55 (emphasis added), and that Sen. Livingston was not Senate Chair of the Committee at the time the above statement was made. As such, counsel's May 2022 statement does not concern Sen. Livingston.

Further, as discussed above, the correct test for waiver concerns whether a legislator's <u>actions</u>—such as "substantial offensive or defensive action," *Yusefzadeh*, 365 F.3d at 1246—manifested an "explicit and unequivocal renunciation of the protection" of legislative immunity. *Helotski*, 442 U.S. at 490–91. While counsel's statements may be relevant to that inquiry, as with other privileges held personally by a party, counsel's statements are not dispositive. *See, e.g.*, *Hanson v. U.S. Agency for Inter'l Dev.*, 372 F.3d 286, 293–94 (4th Cir. 2004).

The litigation conduct of the Chairs had not, in fact, waived their immunity at the time of that status conference. *See supra* Sec. II.b. Counsel's statement accurately reflected that, at that time, the then-Chairs (Rep. Pringle and Sen. McClendon) did not intend to assert immunity if this case proceeded—but this case did <u>not</u> immediately proceed, (*see* Docs. 59 and 61), Sen. McClendon was replaced as Senate Chair of the Committee by Sen. Livingston, the stay was not lifted until over a year later, (Doc. 075), and a Third Amended Complaint has been filed. (Doc. 085.) Given the intervening time, the current Chairs (including Rep. Pringle) have since changed course and determined that they will assert legislative immunity.[1] Because this case was stayed between counsel's statement in May 2022, (Doc. 115-1 at 19:1–10), and the Chairs' assertion of legislative privilege in response to Plaintiffs' Third Amended Complaint, (Doc. 085), no intervening waiver has occurred, and Plaintiffs are not prejudiced by this change in intent. *Barfield*, 396 F. 3d at 1150.

---

[1] In particular, since May 2022, the Chairs have experienced first-hand the "distraction and . . . diver[sion of] their time, energy, and attention from their legislative tasks to defend the litigation" in other cases, *Scott*, 405 F.3d at 1256 (cleaned up), and have determined that the public is better served by them devoting their energies to their legislative tasks.

### III. The Plaintiffs Lack Standing To Sue The Chairs Because The Chairs Cannot Provide Any Of The Relief Sought By The Third Amended Complaint.

Additionally, the Chairs argued in their Motion to Dismiss, (Doc. 093), that the Plaintiffs lack standing to sue the Chairs because "[t]he Chairs can provide none of [the] relief [sought by the Third Amended Complaint]." (*Id.* at 8.) *See also Jacobson v. Florida Secretary of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) ("The litigant must prove (1) an injury in fact that . . . (3) is likely to be redressed by a favorable decision.") (citations omitted).

Plaintiffs primarily respond by citing the Chairs' motion to intervene in the parallel congressional district cases, (Doc. 115 at 48–50) (citing *Caster v. Allen*, 2:21-CV-1536-AMM (N.D. Ala. Dec. 20, 2021), ECF No. 60), and highlighting the importance of the Chairs and the Committee in redistricting. While the Chairs certainly acknowledge the importance of their office, Plaintiffs' arguments miss the point: the specific relief sought by the Third Amended Complaint is outside the power of the Chairs to grant.

Specifically, on the final page of their Third Amended Complaint, Plaintiffs request the following:

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A.   Declare the challenged districts adopted in SB 1 and HB 2 to be unconstitutional as violating the Fourteenth Amendment to the United States Constitution as racial gerrymanders;

B.   Declare the State Senate districting plan adopted in SB 1 a violation of Section 2 of the Voting Rights Act of 1965;

C.   Preliminarily and permanently enjoin the Defendants and their agents from holding elections in the challenged districts adopted in HB 2 and SB 1 and any adjoining districts necessary to remedy the constitutional and Voting Rights Act violations;

D.   Set a reasonable deadline for the State of Alabama to adopt and enact constitutional and VRA-compliant districting plans for State House and State Senate that remedy the unconstitutional gerrymanders and Voting Rights Act violations;

E.   Award Plaintiffs their costs, expenses, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to and in accordance with 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988(b);

F.   Retain jurisdiction over this matter until all Defendants have complied with all orders and mandates of this Court;

G.   Retain jurisdiction over this matter and require all Defendants to subject future State House and State Senate redistricting plans for preclearance review from this court or the U.S. Attorney General under Section 3(c) of the VRA, 52 U.S.C. § 10302(c);

H.   Grant such other and further relief as the Court may deem just and proper.

(Doc. 083 at 53.) The Chairs have no power to redress of any of these requests:

- The Chairs cannot exercise the judicial power prayed for in requests A, B, E, F, G, or H. *See*, *e.g.*, U.S. Const., Art. III, Sec. 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.");

- The Chairs do not administer elections and so cannot grant the request prayed for in request C. *See Chestnut v. Merrill*, no. 2:18-CV-907-KOB, 2018 WL

9439672, *2 (N.D. Ala. Oct. 16, 2018) ("Under Alabama law, the Secretary of State is the proper state entity to administer the congressional district plan and state election law.");

- The Chairs would presumably be involved in adopting and enacting any remedial map, if necessary, but have no control over calling legislative sessions or over the Legislature's calendar, and so cannot grant the request prayed for in request D. *See* 2022 Alabama Constitution, Art. IV, § 48.01, Art. V, § 122; and

- The Chairs have no power to grant the prayer in request G, because any preclearance submission would come from the Attorney General, not from the Chairs. *Cf.* Ala. Code §§ 29-2-50 – 52 (duties of the Chairs) *with* Ala. Code § 36-15-17 (powers of the Attorney General).

In short, while the Chairs certainly have a relationship to the subject-matter of this lawsuit, they are simply the wrong defendants to grant Plaintiffs the relief that they seek in the Third Amended Complaint. As such—because a "favorable decision" against the Chairs would not "redress" the Plaintiffs' alleged injury—Plaintiffs have not met the elements of standing to sue the Chairs. *Jacobson*, 974 F.3d at 1245.

## IV. Plaintiffs Lack a Private Cause of Action Under The VRA, And Their Equal Protection Claim Fails To State A Claim Upon Which Relief Can Be Granted.

These arguments are made in the Defendants' Reply in Support of Motion to Dismiss, (Doc. 117), which the Chairs fully join and adopt.

## CONCLUSION

The Third Amended Complaint is due to be dismissed with prejudice as against the Chairs.

Respectfully submitted this 13th day of October, 2023.

*s/ Michael P. Taunton*
_____

**OF COUNSEL:**

Dorman Walker (ASB-9154-R81J)
BALCH & BINGHAM LLP
Post Office Box 78 (36101)
105 Tallapoosa Street, Suite 200
Montgomery, AL 36104
Telephone: (334) 269-3138
Email: dwalker@balch.com

Michael P. Taunton (ASB-6853-H00S)
BALCH & BINGHAM LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, AL 35203
Telephone: (205) 226-3451
Email: mtaunton@balch.com

***Counsel for Sen. McClendon and Rep. Pringle***

## CERTIFICATE OF SERVICE

I certify that on October 13, 2023, I electronically filed the foregoing notice with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

*s/ Michael P. Taunton*
Of Counsel
