FILED

2024 Sep-20  PM 04:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |
|---|---|
| KHADIDAH STONE, EVAN MILLIGAN, GREATER BIRMINGHAM MINISTRIES, and the ALABAMA STATE CONFERENCE OF THE NAACP, <br><br> *Plaintiffs*, <br><br> vs. <br><br> WES ALLEN, in his official capacity as Secretary of State of Alabama, <br><br> *Defendant*. | No. 2:21-cv-01531-AMM |

## PLAINTIFFS' MOTION TO PRECLUDE IN PART TESTIMONY OF DEFENDANTS' EXPERTS DRS. WILFRED REILLY AND M.V. HOOD III

Plaintiffs request that the Court preclude any testimony and underlying exhibits of Defendants' experts Dr. Wilfred Reilly and Dr. M.V. Hood III that seek to compare Black partisan affiliation (Reilly) and Black statewide voting patterns (Hood) in Alabama to such affiliations and patterns in other states, as well as Dr. Reilly's testimony and underlying exhibits that purport to analyze Black educational disparities using only national data and studies. None of this evidence will assist the Court "to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a), and does not "have a valid scientific connection to the disputed facts in the case." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999).

1

Under Section 2 of the Voting Rights Act, "[a] district is not equally open . . . when minority voters face—unlike their majority peers—bloc voting along racial lines, arising against the backdrop of substantial racial discrimination within the State, that renders a minority vote unequal to a vote by a nonminority voter." *Allen v. Milligan*, 599 U.S. 1, 25 (2023). Reviewing survey data about Black Alabamians' partisan preferences and polling data about Black Alabamians' voting patterns in statewide races versus Black voters in other states provides no information relevant to this inquiry. *Cf., e.g.*, *Abbott v. Perez*, 585 U.S. 579, 619 (2018) (declining to consider even statewide evidence where it failed to "cast any significant light on" the "present local conditions" in a challenged district). As to educational disparities, Dr. Reilly's total reliance on national data and studies will not assist the Court in conducting an "intensely local appraisal," *Thornburg v. Gingles*, 478 U.S. 30, 79 (1986), of the "extent to which members of the minority group *in the state or political subdivision* bear the effects of discrimination in such areas as education, employment[,] and health," *id.* at 37 (emphasis added).

## ARGUMENT

Expert witness testimony must possess sufficient indicia of reliability and relevance to be admissible. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); Fed. R. Evid. 702. The "Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation

and is relevant to the task at hand.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert*, 509 U.S. at 597). Rules 702 and 703, along with Rule 403, give "courts discretion to preclude expert testimony unless it passes more stringent standards of reliability and relevance." *Allison*, 184 F.3d at 1310. "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Id.* at 1306.

Because Drs. Hood and Reilly's testimony about Black partisan affiliations and voting patterns in Alabama versus other states and Dr. Reilly's testimony about national data and studies concerning discrimination in education have no bearing on any relevant, disputed facts or legal issues in the case, the Court should preclude it.

## I.     Dr. Reilly and Dr. Hood's Comparisons of Black Voters in Alabama to Black Voters in Other States Are Irrelevant.

Racially polarized voting ("RPV") occurs where Black and white people tend to vote for different candidates in an election. *Gingles*, 478 U.S. at 53 n.21. While Dr. Reilly initially purported to opine that racial polarization in Alabama is not unique compared to states across the country, Reilly Expert Report (Ex. A) at 3–4; Reilly Dep. (Ex. B) at 68:15–69:24, he admitted he did not examine racial polarization at all. Reilly Dep. at 57:22–25. Dr. Reilly omitted white voters from his analysis entirely. *Id.* at 95:22–96:21; Reilly Report at 4–7. Rather, he merely compared results of a Pew party affiliation poll for Black voters in Alabama with

Black voters in several other states. *Id.* 55:6–57:21. Because "the Alabama patterns correlated … with the national patterns," *id.* 96:5–14, Dr. Reilly concluded "if Alabama is racially polarized than so is every other large state in the USA." Exhibit C, at 7.

Like Dr. Reilly, Dr. Hood included data and analysis in his report concerning Black statewide voting patterns in Alabama versus those in other states without analyzing white voting patterns. Though Dr. Hood knows how to perform RPV analyses, Hood Dep. (Ex. C) at 49:13–25, 113:22–114:6, he admittedly did not do so here, *id.* 107:9–10. Rather, Dr. Hood simply used exit polling data to compare Black Alabamians' support for Democratic candidates in certain statewide races with those of Black voters in other states that have a Black population that makes up 10% or greater in the state. Hood Expert Report (Ex. D) at 3.[1]

Both experts' comparison of Black political affiliation or voting patterns in Alabama versus nationally is irrelevant for several reasons.

*First*, Drs. Reilly and Hood's statistical compilations offer no insight into the existence or extent of RPV in Alabama. Reilly Dep. at 55:6–56:24; Hood Dep. at 107:9–10. Neither conducted any racially polarized voting analysis whatsoever.

---

[1] Although exit polls are useful tools for identifying racial polarization, they require a *local* analysis of white *and* Black voting patterns. *See, e.g.*, *Hall v. Holder*, 955 F.2d 1563, 1569 (11th Cir. 1992) (relying on exit polls to identify racially polarized voting), *rev'd on other grounds*, 512 U.S. 874 (1994).

Reilly Dep. at 57:22–25; Hood Dep. at 107:9–10. Most importantly, neither expert analyzes or cites any evidence concerning white bloc voting or white party affiliation at all. Reilly Report at 4–7; Reilly Dep. at 95:22–96:21; Hood Dep. at 96:8–16. Both also fail to address the fact that, in some states or jurisdictions within states, Black and white voters might vote for the same party or candidate, which their data masks. *See, e.g.*, *Abbott*, 585 U.S. at 616 (accepting that racial polarization in one part of a state provided "good reason" to draw a majority-minority district); *id.* at 621 (separately concluding that statewide polarization data was insufficient to justify a VRA district elsewhere); *Abrams v. Johnson*, 521 U.S. 74, 93–94 (1997) (declining to find racial polarization in one place where there was a "general willingness of whites to vote for blacks," despite concluding that polarization required a VRA district elsewhere in the state).

Dr. Reilly's comparison seeks answers to questions that *Gingles* does not ask: whether Alabama's racially polarized voting—though he looks only at Black party affiliation—is "unique." Reilly Dep. at 55:6–24. Dr. Hood offers no reason for his analysis, other than counsel asked him to perform it. Hood Dep. at 38:5–11. Both experts admit they did not examine white voting patterns, *id.*; Reilly Dep. at 95:22–96:21, thereby precluding any comparative racial analysis.

Nor is either expert's Black voting pattern or affiliation analysis more broadly relevant at the totality-of-the-circumstances stage. Senate Factor 2 asks courts to

examine "the extent to which voting in the *elections of the state or political subdivision* is racially polarized." *Gingles*, 478 U.S. at 37 (emphasis added). The emphasis is on polarization in the challenged districts or, at most, statewide. *See, e.g.*, *Milligan*, 599 U.S. at 22; *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, 587 F. Supp. 3d 1222, 1316 (N.D. Ga. 2022). The "extent" of RPV cannot be understood without first analyzing the existence of racially polarized voting. *See Wright v. Sumter Cnty. Bd. of Elections and Registration*, 979 F.3d 1282, 1310 (11th Cir. 2020) (excluding evidence of elections where no party offered any analysis of the Black and white voting patterns in them).

As Dr. Hood acknowledges, his analysis cannot demonstrate "the extent" of RPV in Alabama because he neither examined Black *voting patterns* in the State, nor examined white voting patterns in Alabama or elsewhere. Hood Dep. at 48:14–18. Dr. Reilly's opinions based on Black party affiliation and Dr. Hood's opinions about Black voting patterns across different states tell the Court nothing about whether "the voting strength of the minority group" in the Montgomery and Huntsville regions "has been impermissibly diluted." *Nipper v. Smith*, 39 F.3d 1494, 1527 (11th Cir. 1994) (en banc).

In a Section 2 case, evidence is irrelevant "if it does not allow the trier of fact reasonably to infer anything about whether or not the voting strength of the minority group has been impermissibly diluted." *Id.* That is precisely the case with evidence

comparing only statewide Black political affiliations and voting patterns between Alabama and elsewhere.

Each expert's analysis also suffers from independent flaws. As for Dr. Reilly, even if a cross-state comparison of Black voting patterns could somehow be relevant to a Section 2 inquiry, he performed no such comparison. Dr. Reilly "did not conduct an analysis of vote choice by race" to form his opinions. Reilly Dep. at 99:8–11. Instead, Dr. Reilly relied on Black Americans' party affiliation across states. But party affiliation data cannot be repurposed into a "unique" RPV analysis. *See, e.g.*, *Nairne v. Ardoin*, 2023 WL 7388850, *5 (M.D. La. Nov. 8, 2023) ("An opinion which ascribes preferences between black and white voters to party affiliation is a red herring."). Racially polarized voting analyses use "statistics concerning … elections" and "voting patterns[.]" *Nipper*, 39 F.3d at 1537.

Dr. Reilly's comparative analysis of Black party affiliation across states does nothing to advance the RPV inquiry. The data he looks at does not include white voting populations, as *Gingles* requires.[2] Dr. Reilly does not explain how or why Black Americans' party affiliation across states is probative of "bloc voting along racial lines" in the Montgomery or Huntsville regions. *See Milligan*, 599 U.S. at 25.

---

[2] Dr. Reilly did not analyze voting patterns or party affiliation of white Americans because he "didn't think it was necessary," to form his RPV opinions. Reilly Dep. at 58:1–59:4.

And Dr. Reilly admits his opinions about Black voting patterns "wasn't the focus of [his] report." Reilly Dep. at 101:16–102:2.

As for Dr. Hood, his decision to erect an arbitrary 10% Black population threshold for comparison states lacks a reliable basis and makes his comparisons even less relevant. When asked why he selected a 10% threshold, Dr. Hood testified that he "thought that [it] was a large enough threshold where when you're conducting a survey inside of a particular state[ ], that there would be enough critical mass to have some statistical leverage on this question." Hood Dep. at 36:22–37:3. But notably absent from Dr. Hood's report and testimony is any scientific basis on which to use a 10% threshold as a comparator for Black voting patterns. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 (11th Cir. 2005) ("In evaluating the reliability of an expert's method, however, a district court may properly consider whether the expert's methodology has been contrived to reach a particular result.").

The Court should preclude this testimony and underlying data and exhibits as irrelevant and unreliable.

## II.    Dr. Reilly's Education Analyses Are Irrelevant and Unreliable.

Like his RPV analyses, the Court should preclude Dr. Reilly's testimony about education disparities in Alabama. *See* Reilly Report § V.A. His conclusions are irrelevant because he fails to consider any Alabama-specific education data. And to the extent he seeks to extrapolate from this national data to form specific conclusions

about Alabama (or the Montgomery and Huntsville regions), his methodology would be unreliable. *Daubert*, 509 U.S. at 593.

The fifth Senate Factor asks courts to analyze "[t]he extent to which members of the minority group *in the state or political subdivision* bear the effects of discrimination in such areas as education, employment, and health, which hinder their ability to participate effectively in the political process." *Gingles*, 478 U.S. at 37 (emphasis added). "[D]isproportionate educational, employment, income level, and living conditions arising from past discrimination tend to depress minority political participation." *United States v. Marengo Cnty. Comm'n*, 731 F.2d 1546, 1568 (11th Cir. 1984). Measuring "disproportiona[lity]" is done at the local or state level where the minority group resides. *See, e.g.*, *Wright*, 979 F.3d at 1294 (weighing "socioeconomic disparities between the black and white residents" at the county level); *Marengo Cnty. Comm'n*, 731 F.2d at 1568 (same). The fifth Senate Factor concerns "socioeconomic disparities between Black Alabamians and white Alabamians on several dimensions: education, economics, housing, and health[,]" among others. *Milligan v. Merrill*, 582 F. Supp. 3d 924, 1021 (N.D. Ala. 2022). At a minimum, evidence relevant to the fifth Senate Factor must consider socioeconomic disparities within the challenged jurisdiction or state.

Dr. Reilly's analysis of education disparities fails to meet this requirement. He exclusively examines national data to form his opinions about education disparities

in Alabama; not once considering metrics within "the state or political subdivision" at issue.[3] *Gingles*, 478 U.S. at 37; Reilly Report at 8–14. When analyzing gaps in SAT scores between Black and white students, Dr. Reilly relies only on national data. *Id.* at 10; Reilly Dep. at 140:2–141:15, 142:16–19 ("There is no broken-out Alabama gap"). When analyzing school performance disparities between Black and white students, he looks only at national data. Reilly Report at 12; Reilly Dep. at 149:12–152:6 ("None of these [metrics] are going to be specifically like Center County Alabama or something like that."). And when analyzing disparities between Black and white children's average study time, Dr. Reilly again relies only on national data. Reilly Report at 13; Reilly Dep. Tr. 161:19–25 ("I didn't break out Alabama."). These three metrics are the only ones Dr. Reilly cited in forming his opinions about education disparities between Black and white Alabamians.

To the extent Dr. Reilly or Defendants intend to rely on these national education studies and figures to imply answers about racial disparities in Alabama, such analyses would be unreliable. *See, e.g.*, *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 301 F. Supp. 3d 1297, 1317 (M.D. Ga. 2018), *aff'd,* 979 F.3d 1282, 1310 (11th Cir. 2020) (discounting evidence of national levels of Black support for Democrats where there was "no evidence of the percentages in Sumter County"); *cf.*

---

[3] Dr. Reilly felt "comfortable with what [he] was able to access" to reach his conclusions. Reilly Dep. Tr. 80:3–15.

*Rink*, 400 F.3d at 1290 (affirming unreliability of expert testimony that sought to extrapolate data from "one site to another without making particularized findings which accounted for the differences in conditions"). Dr. Reilly's analyses of education disparities have nothing to do with "[t]he extent to which members of the minority group in the state or political subdivision bear the effects of discrimination in … education." *Gingles*, 478 U.S. at 37. Thus, Dr. Reilly's sweeping conclusions from national data to suggest "Alabama's 'unique' problem with Black/white gaps is in fact a major and well-known national issue[,]" Reilly Dep. at 152:7–10, despite not analyzing what Alabama's education "gaps" are should be precluded as unreliable. Reilly Report at 11.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preclude Drs. Reilly and Hood from testifying about the foregoing issues.

DATED this 20th day of September, 2024

Respectfully submitted,

/s/ Alison Mollman
Alison Mollman
Laurel Hattix
AMERICAN CIVIL LIBERTIES UNION OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
amollman@aclualabama.org
lhattix@aclualabama.org

/s/ Deuel Ross
Deuel Ross*
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
700 14th Street NW Ste. 600
Washington, DC 20005
(202) 682-1300
dross@naacpldf.org

Leah Aden*
Stuart Naifeh*
Kathryn Sadasivan (ASB-517-E48T)
Brittany Carter*
Ashley Burrell*
Colin Burke*
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
laden@naacpldf.org
snaifeh@naacpldf.org
ksadasivan@naacpldf.org
bcarter@naacpldf.org
aburrell@naacpldf.org

/s/ Davin M. Rosborough
Davin M. Rosborough*
Dayton Campbell-Harris*
Theresa J. Lee*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
New York, NY 10004
(212) 549-2500
drosborough@aclu.org
dcampbell-harris@aclu.org
tlee@aclu.org
slakin@aclu.org

Jacob van Leer*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th St. NW
Washington, DC 20005
(202) 715-0815
jvanleer@aclu.org

/s/ Sidney Jackson
Sidney Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
WIGGINS, CHILDS, PANTAZIS, FISHER & GOLDFARB
301 19th Street
North Birmingham, AL 35203
(205) 314-0500
sjackson@wigginschilds.com
nlawsen@wigginschilds.com

/s/ Jack Genberg
Bradley E. Heard*

cburke@naacpldf.org

David Dunn*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

Blayne R. Thompson*
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
blayne.thompson@hoganlovells.com

Michael Turrill*
Harmony R. Gbe*
James W. Ettinger*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars Suite 1400
Los Angeles, CA 90067
(310) 785-4600
michael.turrill@hoganlovells.com
harmony.gbe@hoganlovells.com
jay.ettinger@hoganlovells.com

Jack Genberg*
Jess Unger*
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Avenue, Suite
340 Decatur, GA 30030
(404) 521-6700
bradley.heard@splcenter.org
jack.genberg@splcenter.org
jess.unger@splcenter.org

Avner Shapiro*
SOUTHERN POVERTY LAW CENTER
1101 17th Street NW
Suite 510
Washington, DC 20036
240-890-1735
avner.shapiro@splcenter.org

Jessica L. Ellsworth*
Shelita M. Stewart*
Amanda N. Allen*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
jessica.ellsworth@hoganlovells.com
shelita.stewart@hoganlovells.com
amanda.n.allen@hoganlovells.com

*Attorneys for Plaintiffs*

*Admitted pro hac vice*

13

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record in this case.

/s/ Davin M. Rosborough
Davin M. Rosborough
AMERICAN CIVIL LIBERTIES UNION
 FOUNDATION
125 Broad St.
New York, NY 10004
(212) 549-2500
drosborough@aclu.org
